IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-1179
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JERRY WAYNE MERGERSON and
RICHARD UCHECHUKWU ANUNASO,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

(July 12, 1993)

Before KING, HIGGINBOTHAM and DEMOSS, Circuit Judges.

KING, Circuit Judge:

Jerry Wayne Mergerson ("Mergerson") and Richard Uchechukwu
Anunaso ("Anunaso") were convicted of various drug offenses in
connection with a heroin ring in which they were involved.
Mergerson was also convicted of being a felon in possession of a
firearm.  Mergerson and Anunaso appeal their convictions and
corresponding sentences.  We affirm both Anunaso's drug
convictions and sentences.  We affirm Mergerson's convictions on
counts one through four of the indictment, but reverse his
conviction on count five.  We likewise affirm Mergerson's

1

sentences for his convictions on counts two through four, but vacate Mergerson's sentence for count one of the indictment. We remand for resentencing.

## I. PROCEDURAL AND FACTUAL BACKGROUND

### A.

On October 8, 1991, a grand jury returned a five-count indictment against Mergerson and Anunaso. Count one of the indictment charged the defendants and Mergerson's girlfriend, Sheila Guy, with conspiracy to traffick heroin in violation of 21 U.S.C. § 846. Counts two, three, and four each charged Mergerson with unlawful distribution of heroin in violation of 21 U.S.C. § 841(a)(1). Pursuant to 18 U.S.C. § 2, Anunaso was charged under counts two, three, and four with aiding and abetting Mergerson. In count five of the indictment, Mergerson was additionally charged with unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On October 11, 1991, the Government filed a "penalty enhancement" information under 21 U.S.C. § 841(a)(1) with respect to Mergerson, alleging eight prior felony drug convictions.

Mergerson and Anunaso were tried on December 4, 1991, and both were found guilty of all charges against them. On January 3, 1992, pursuant to 21 U.S.C § 851(b), Mergerson was arraigned regarding the "penalty enhancement" information. On January 17, 1993, at a hearing on the Government's "penalty enhancement" information, certified copies of Mergerson's prior federal and

2

state convictions were introduced into evidence, and Mergerson was identified as being the same person named in those documents. The district court found, beyond a reasonable doubt, that the allegations of prior convictions were true.

On February 21, 1992, Anunaso was sentenced to concurrent 250-month terms of imprisonment on counts one, three, and four of the indictment and to a 240-month term on count two of the indictment. Anunaso was also sentenced to concurrent five-year terms of supervised release on each count. The court also imposed a $200 special assessment. Mergerson was sentenced to concurrent terms of life imprisonment on counts one, three, and four and to concurrent thirty-year terms on counts two and five.[1] The court imposed concurrent eight-year terms of supervised release on counts two, three, and four, and a concurrent five-year term of supervised release on count five.

**B.**

This case involved three distinct drug transactions that occurred in late 1991. The first transaction took place on August 19, 1991, when DEA Special Agent David Battiste met with Mergerson in a parking lot in Fort Worth, Texas, for the purpose of purchasing an ounce of heroin. At that meeting, Mergerson

---

[1] Pursuant to 21 U.S.C. § 841(a)(1)(A), Mergerson was sentenced to a mandatory life term without possibility of release on count one of the indictment, which charged Mergerson with conspiracy to possess more than a kilogram of heroin. The remaining life sentences were not imposed without the possibility of release.

3

told Battiste that he did not have the heroin, but would retrieve it at another location. At that point, Mergerson and Battiste got in Battiste's car and began driving to Anunaso's apartment complex. While en route to Anunaso's apartment, Mergerson told Battiste that his heroin business was thriving and that he had "several girls" working for him. Mergerson then made a number of phone calls on Battiste's mobile phone, one of which was later identified as being made to Anunaso's mobile phone. During one of the phone calls, Mergerson told the other party that he would be over shortly and that he was bringing a friend. Contemporaneously, a DEA agent conducting surveillance saw Anunaso outside of his apartment building talking on a mobile phone.

Upon reaching the apartment complex, Mergerson went into Anunaso's building and returned within a few minutes accompanied by Anunaso. Anunaso made eye contact with Battiste, who stood next to Mergerson, and nodded. Mergerson then informed Battiste that he had the heroin all along and directed Battiste to return to Mergerson's car. When they returned to his car, Mergerson delivered 24.9 grams of heroin to Battiste in exchange for $5,500.

On September 5, 1992, Battiste again met with Mergerson at a hotel. During this second transaction, which was videotaped, Mergerson sold 100.2 grams of heroin to Battiste. Shortly thereafter, DEA Special Agent Misha Harrington, acting undercover, joined Mergerson and Battiste. Harrington entered

4

the room with two bundles of cash and asked Mergerson to count it. During the same meeting, the undercover agents asked Mergerson how much heroin he could supply at any one time. Mergerson replied that "the sky was the limit." After some discussion in which Mergerson offered to sell to them a kilogram of heroin that afternoon, Battiste and Harrington told him that they wished to purchase a kilogram later in the week. As the three men left the hotel room, Mergerson introduced himself to Harrington by his nickname "Big Merk." Later that day, surveillance officers followed Mergerson to a business by the name of "Communications on the Run," where Mergerson claimed to be employed, and later to Anunaso's apartment.

At approximately 12:30 p.m. on September 11, 1991, Mergerson negotiated with Battiste by telephone for the sale of one kilogram of heroin to Battiste and Harrington for $170,000. The drugs were to be delivered to the same hotel where the prior transaction had occurred. At 1:00 p.m., Mergerson called Battiste to tell him that he was only able to acquire 350 grams. Surveillance personnel observed Mergerson arriving at Anunaso's apartment complex in a automobile registered to Anunaso. Mergerson left the apartment complex in the same vehicle and drove it to the hotel. There Mergerson met with the two agents and delivered to the agents 334.8 grams of heroin. At the outset of the meeting, the agents questioned Mergerson about why he did not bring an entire kilogram. Mergerson answered that he was not the one in the trafficking operation who controlled the heroin.

5

He further stated that "we got a place where we keep it" and that when he went to that location there was less than a kilogram present. Mergerson assured them that he would be able to get the rest of the heroin the next day or "Friday at the latest," but could not do so immediately because "his man" was "out of town." Mergerson was arrested shortly thereafter.

A search warrant was executed at Anunaso's apartment after Mergerson was arrested. Police seized a number of items of incriminating evidence, including: (i) a piece of paper containing notations that were later identified as referring to the heroin used in the transaction as well as heroin used in other transactions, (ii) a small electronic business organizer which contained the name "Merk" together with the address and telephone number of "Communications on the Run" and Mergerson's pager number, (iii) a notebook containing notes of what appeared to be narcotics transactions, which included the name "Merk," (iv) a box containing several plastic baggies, and (v) a loaded .25 caliber pistol. A search conducted at Mergerson's residence on October 11, 1991, resulted in the seizure of an inoperable nine millimeter pistol from beneath the mattress and box spring in the master bedroom, a shoe box containing zip lock baggies, and a 7.8 grams of cocaine. Anunaso was also arrested.

## II. DISCUSSION

## A. Sufficiency of the Evidence: the Drug Convictions

Mergerson and Anunaso both challenge the sufficiency of the

6

evidence supporting their convictions under the first count of the indictment, which alleged a conspiracy to traffick in heroin in violation of 21 U.S.C. § 846. Anunaso also challenges the sufficiency of the evidence supporting his conviction under counts two, three, and four that charged him with aiding and abetting Mergerson's distributions of heroin. Mergerson does not challenge the sufficiency of the evidence on the three distribution counts.

The standard of review in assessing a challenge to the sufficiency of the evidence in a criminal case is whether a "reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), aff'd on other grounds, 462 U.S. 356 (1983). In evaluating the sufficiency of the evidence, a court views all evidence and all reasonable inferences drawn from it in the light most favorable to the government. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Glasser v. United States, 315 U.S. 60, 80 (1942). This standard applies whether the evidence is direct or circumstantial. See United States v. Triplette, 922 F.2d 1174 (5th Cir), cert. denied, 111 S. Ct. 2245 (1991).

**i) The Conspiracy Count**

In a conspiracy prosecution under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt not only the existence of an agreement between two or more persons to violate

the narcotics laws, but also that each person knew of the conspiracy, intended to join it, and actually participated in the conspiracy. See United States v. Espinoza-Seaenz, 862 F.2d 526, 536 (5th Cir. 1988); United States v. Michelena-Orovio, 719 F.2d 738, 742 (5th Cir. 1983) (en banc), cert. denied, 465 U.S. 1104 (1984). A mere association with persons in the conspiracy or presence at the scene of the crime is not enough. See United States v. Davis, 666 F.2d 195, 201 (5th Cir. 1982).

Anunaso argues that the Government's evidence is insufficient because it proves only a mere association between Mergerson and Anunaso. In support of his contention, Anunaso points out that the Government failed to find any direct evidence, such as heroin, in the search of his apartment. Moreover, he argues, at no time during any of the three drug transactions was there direct evidence to link him to the conspiracy. During the two videotaped transactions, Anunaso points out, there was no direct mention of his participation whatsoever. Nor did co-defendant Sheila Guy mention Anunaso's involvement. Finally, Anunaso argues that the writings found by the agents are insufficient because the police never took any writing exemplars to prove that the writings were made by Anunaso and further because there is nothing in the writings to link them to any specific activity or incident.

In a similar vein, Mergerson argues that the evidence was insufficient to show any conspiratorial agreement between Mergerson and either Sheila Guy or Anunaso. With respect to Guy,

8

Mergerson contends that the evidence proves no more than that he lived with her and that she drove him to the hotel on the day of the third transaction, September 11, 1991.  It is undisputed that Guy remained in the car until Mergerson was arrested. Mergerson argues that there is no evidence that she knew anything about the transaction taking place in the hotel room, or of the previous two transactions.  With respect to Anunaso, Mergerson maintains that the evidence shows only that the two men were acquainted. Conceding that their associations were suspicious, Mergerson argues that "suspicious circumstances . . . are not enough to sustain a conviction for conspiracy . . . ." United States v. Nusraty, 867 F.2d 759, 764 (2d Cir. 1989).

The Government argues that the evidence regarding each of the three transactions establishes much more than a mere association.  During the first transaction, Mergerson told Battiste that they would have to go retrieve the heroin, and in so doing they drove directly to Anunaso's apartment.  While driving to Anunaso's apartment, Mergerson bragged to Battiste that his drug business was going so well that he had several females making deliveries for him.  The Government also notes that only after Anunaso looked Battiste over and nodded at Mergerson did Mergerson consummate the heroin sale. During the second delivery of heroin, Mergerson told the agents that "his man" set the price of the heroin and that Mergerson did not control the heroin supply.  Immediately after the deal was made, Mergerson met with Anunaso and drove to Anunaso's apartment.

During the third transaction, Mergerson told Battiste that he had to go get the heroin, and ten minutes later agents spotted Mergerson arriving at Anunaso's apartment. Mergerson drove to the transaction in Anunaso's car. A digital electronic gram scale was later discovered in that automobile. We also observe that agents found documents at Anunaso's apartment which contained notes of narcotics transactions which listed "Merk" as a participant. Anunaso's electronic business organizer contained the name "Merk" along with Mergerson's phone number and pager number.

Although almost entirely circumstantial, the evidence of a conspiratorial relationship between Mergerson and Anunaso was extensive. Viewing that evidence and all reasonable inferences drawn from it in a light most favorable to the government, Glasser, 315 U.S. at 80, we believe that a rational jury could have concluded beyond a reasonable doubt that Anunaso was Mergerson's heroin supplier. As such, Anunaso and Mergerson not only agreed to violate the narcotics laws, but also each actively participated in the drug trafficking operation.[2]

---

[2] Because we find the evidence is abundantly sufficient to support the existence of a conspiracy between Mergerson and Anunaso, we need not address the sufficiency of the evidence linking the third co-defendant charged in the first count of the indictment, Sheila Guy, with the conspiracy. Neither Mergerson nor Anunaso have argued that there was a fatal variance between count of the indictment and the proof at trial regarding the evidence implicating Guy in the conspiracy. See United States v. Hernandez, 962 F.2d 1152, 1159 (5th Cir. 1992). Even if they had, we believe that any such variance did not affect the substantial rights of either defendant and, thus, was not reversible error. See id.

## ii) Anunaso's Distribution Convictions

Anunaso further contends that the evidence is insufficient to support his convictions under the aiding-and-abetting statute for Mergerson's three separate distributions of heroin to the undercover agents. To prove aiding and abetting in a criminal venture, the prosecution must prove that the defendant: i) associated with the criminal enterprise, ii) participated in the venture, and iii) sought by action to make the venture succeed. See United States v. Stone, 960 F.2d 426, 433 (5th Cir. 1992). The above-mentioned evidence establishing the guilt of Anunaso on the conspiracy count equally establishes his guilt on all three of the substantive counts of distribution. Regarding each of the three separate transactions between Mergerson and the undercover agents, the Government presented sufficient evidence to prove all three elements of Anunaso's aiding and abetting.

## B. Did the district court employ the proper standard of proof in finding that the conspiracy involved more than one kilogram of heroin?

Pursuant to a federal statute, the district court's factual finding that Mergerson had the quantity of heroin at issue in this case -- more than one kilogram -- triggered a mandatory term of life imprisonment without possibility of release in Mergerson's case. See 21 U.S.C. § 841(a)(1)(A)(i) (possession of one kilo or more of heroin and two or more prior convictions for felony drug offense results in mandatory life sentence). Had the district court found less than a kilogram but more than 100

11

grams, then Mergerson would have been eligible for a prison term between thirty years and life.  See 21 U.S.C. § 841(b)(1)(B) (possession of between 100-999 grams of heroin and two or more prior convictions results in sentencing range of 10 years to life); U.S.S.G. § 4B1.1 & Sentencing Table (career offender provision, requiring sentencing range of 360 months to life).

At the sentencing hearing, the district court made its finding regarding the quantity of heroin under the preponderance-of-the-evidence standard *and*, alternatively, under the clear-and-convincing-evidence standard.  Mergerson contends that the district court should have instead employed the reasonable doubt standard.  It is well-established law in this circuit that, as a general matter, the burden of proof at sentencing is by a preponderance of the evidence.  See United States v. Angulo, 927 F.2d 202, 205 (5th Cir. 1991) ("[T]he district court need only determine its factual findings at sentencing by a `preponderance of relevant and sufficiently reliable evidence.'") (citation omitted); United States v. Kinder, 946 F.2d 362 (5th Cir. 1991), cert. denied, 112 S.Ct. 2290 (1992).  Mergerson argues, however, that the due process clause requires an exception to the traditional preponderance standard when a particular sentencing fact found by the district court dramatically alters the statutory maximum for the offense of conviction.[3]

---

[3] In the case at bar, the district court did employ the reasonable doubt standard in finding that Mergerson was a repeat offender.  That standard is required by the relevant statute, 21 U.S.C. § 851(c)(1).  By introducing genuine copies of court documents proving Mergerson's prior convictions and further

We recognize a growing number of cases decided by courts in other circuits in which a higher standard of proof has been suggested or required when a finding of a particular fact relevant to sentencing dramatically alters the sentencing options of the court to the disadvantage of the defendant.  See, e.g., United States v. Kikumura, 918 F.2d 1084, 1101 (3rd Cir. 1990) (requiring finding by clear-and-convincing-evidence standard); United States v. Julian, 922 F.2d 563, 569 n.1 (10th Cir. 1990) (in remanding to district court, suggesting same); United States v. Restrepo, 946 F.2d 654, 661, n.12 (9th Cir. 1991) (en banc) (citing Kikumura with approval); United States v. Townley, 929 F.2d 365, 370 (8th Cir. 1991) (same); see also Richard Husseini, Comment, *The Federal Sentencing Guidelines: Adopting Clear and Convincing Evidence as the Burden of Proof*, 57 U. CHI. L. REV. 1387 (1990); but see United States v. Masters, 978 F.2d 281, 287 (7th Cir. 1992).  We also recognize dicta in the Supreme Court's decision in McMillan v. Pennsylvania, 477 U.S. 79 (1986), to the same extent.  See id. at 88 (suggesting that in cases where certain sentencing fact is a "tail which wags the dog of the substantive offense," reasonable doubt standard may be required); see also Kinder v. United States, 112 S. Ct. 2290 (1992) (White, J., dissenting from denial of certiorari) (arguing that Court

_____

establishing that Mergerson was the individual named in those documents, the Government proved the fact of Mergerson's prior convictions beyond a reasonable doubt.  Mergerson's argument on appeal is not that the district erred regarding his prior offender status; rather, it relates to the district court's finding that Mergerson possessed more than a kilogram of heroin.

13

should grant certiorari to decide whether higher standard of proof than mere preponderance standard should be applied in Guidelines cases requiring dramatically higher sentence if certain sentencing fact found).

In a recent Sentencing Guidelines case, we recognized the Third Circuit's decision in Kikumura, supra, and commented on the possibility of requiring a higher standard than the preponderance standard in certain sentencing situations. However, we saw no need to decide the issue because the defendant simply had argued that a clear-and-convincing standard was all that was necessary and the district court in that case had in fact employed such a standard. See United States v. Billingsley, 978 F.2d 861, 866 (5th Cir. 1992). In the instant case, although the district court applied both the preponderance standard and the clear and convincing standard, we must address the merits of the issue because the appellant has argued that the district court should have applied the reasonable doubt standard.

We believe that, although there may be certain cases where a sentencing fact is a "tail that wags the dog of the substantive offense," McMillian, 477 U.S. at 88, and might arguably require a finding beyond a reasonable doubt, id., this is not such a case. Accordingly, the preponderance standard was sufficient. We observe that Mergerson would have faced punishment as a career offender under U.S.S.G § 4B1.1 regardless of whether the district court had found that the offense involved more than a kilogram of heroin. Mergerson does not contest the fact that the offense

14

involved at least 100 grams of heroin.  Punishment for such an offense by a recidivist such as Mergerson under 21 U.S.C § 841(b)(1)(B) includes a term of imprisonment of not less than ten years nor more than life.  U.S.S.G § 4B1.1 additionally requires that, as a career offender, Mergerson's offense level be set at 37.  When Mergerson's criminal history category of VI is factored into the sentencing equation, the Guidelines require the imposition of a sentence of between thirty years and life imprisonment.  See U.S.S.G., Sentencing Table.  Therefore, because the minimum mandatory penalty in this case would have been thirty years in any event (with the maximum sentence of life possible), the district court's finding that Mergerson possessed over a kilogram of heroin did not have the dramatic effect upon sentencing necessary to require the reasonable doubt standard to be considered.

Mergerson alternatively argues that the reasonable doubt standard should have been employed because a *mandatory life sentence without the possibility for release* was automatic once the district court found over a kilogram of heroin.  This argument, which assumes that such an extremely harsh punishment requires a heightened standard of proof regarding dispositive sentencing facts, implicates concerns traditionally raised in the Eighth Amendment context.  Outside the capital sentencing context, such heightened protections during the sentencing phase of a criminal trial are generally unnecessary simply because the punishment is life imprisonment without the possibility for

15

release.  Cf. Harmelin v. Michigan, 111 S. Ct. 2680, 2701-02

(1991) (mandatory sentence of life imprisonment without parole

for the crime of possession of more than 650 grams of cocaine was

not cruel and unusual in violation of the Eighth Amendment);

Rummel v. Estelle, 445 U.S. 263 (1980) (life sentence without

parole for three relatively minor non-violent felonies not Eighth

Amendment violation); see also Woodson v. North Carolina, 428

U.S. 280, 305 (1976) (joint opinion of Stewart, Powell & Stevens,

JJ.) (requiring heightened protections in capital sentencing

context, commenting that "[d]eath, in its finality, differs more

from life imprisonment than a 100-year prison term differs from

one of only a year or two").  Although numerous lower courts have

required that sentencing facts must be found beyond a reasonable

doubt in the *capital* sentencing context,[4] such cases were based

on the uniqueness of the death penalty.  See, e.g., People v.

Balderas, 711 P.2d 480, 516 n.32 (Cal. 1985).  Although harsh, a

mandatory life sentence simply does not implicate the same Eighth

Amendment concerns.  Cf. Harmelin, supra.  We thus reject

Mergerson's argument that the reasonable doubt standard should

have been employed in view of the *mandatory* life imprisonment

that was triggered by the district court's finding of over a

---

   [4] See, e.g., People v. Heishman, 753 P.2d 629, 651-52 (Cal.
1988) (requiring unadjudicated extraneous offenses offered in
aggravation to be found beyond a reasonable doubt); State v.
Lafferty, 749 P.2d 1239, 1259 (Utah 1988) (same).  This court has
never addressed that precise issue, although we have repeatedly
held that evidence of unadjudicated extraneous offenses is
admissible in the capital sentencing context.  See, e.g.,
Williams v. Lynaugh, 814 F.2d 205, 207-08 (5th Cir. 1987).

16

kilogram of heroin.


**C. Did the district court err in finding the applicable drug quantities for sentencing purposes?**

Both Anunaso and Mergerson challenge the correctness of the district court's findings regarding the applicable drug quantities for purposes of sentencing. A district court's determination of the amount of drugs involved in an offense is protected by the clearly erroneous standard of appellate review. See United States v. Mir, 919 F.2d 940 (5th Cir. 1990); United States v. Sarasti, 869 F.2d 805, 806 (5th Cir. 1989). As discussed, in the instant case, the appropriate standard of proof was the preponderance standard.

We initially observe that we must engage in two separate sufficiency analyses regarding the district court's findings. The first concerns the district court's quantity findings made pursuant to the Sentencing Guidelines. The presentence investigation report, which was adopted by the district court, found that 1650 grams of heroin[5] was involved in the conspiracy for purposes of sentencing under the Guidelines. That finding was based not only on the amounts of heroin actually proven to have been possessed with the intent to distribute, but also those amounts negotiated during the Government's undercover sting operation. The second sufficiency analysis concerns the district

---

[5] 156 grams of the "heroin" was actually a Guidelines conversion from 7.8 grams of cocaine base. Neither defendant has objected to the conversion or its inclusion in the 1650-gram total quantity.

17

court's quantity finding for purposes of sentencing Mergerson to a mandatory life sentence under 21 U.S.C. § 841(a)(1)(A)(i). Based on drug transaction notes found in Anunaso's residence, the district court found that Mergerson actually possessed over 1000 grams of heroin with the intent to distribute. Because § 841(a)(1)(A)(i) requires that drug quantities *actually be possessed with the intent to distribute* -- rather than merely being negotiated -- the district court's findings for purposes of Guidelines sentencing are in large part inapplicable to the court's separate findings pursuant to § 841(a)(1)(A)(i).[6]

### i. The district court's quantity findings for the Guidelines sentences

The appellants' first objection to the 1650-gram is that it allegedly includes both the 334.8 grams of heroin sold on September 11, 1991, and the one kilogram of heroin that the parties negotiated for prior to the September 11 sale. The appellants contend that the 334.8-gram figure should be merged

---

[6] The only overlap between the two findings were the amounts of heroin listed in the PSI that were actually possessed by Mergerson and Anunaso. Of the 1650 grams listed in the PSI only a approximately 450 grams were actually possessed; the remainder was the kilogram negotiated by Mergerson with the undercover agents (but never delivered or possessed) and the 156 grams of "heroin" converted from the 7.8 grams of cocaine base found in Mergerson's apartment. Thus, considering only the amounts of heroin listed in the PSI that were actually possessed, the district court could not have sentenced Mergerson to a mandatory life sentence under § 841(a)(1)(A). For purposes of Mergerson's non-Guidelines sentencing on count one, the district court separately found that over 1000 grams were actually possessed. The latter finding was based on the drug transaction notes found in Anunaso's apartment. See infra.

18

into the one kilogram figure so that the maximum amount that could be found from the September 11 negotiations and transaction is one kilogram. This argument ignores the fact that on September 11, 1991, *after* he sold the heroin to Battiste, Mergerson negotiated with the agents for an *additional* kilogram to be delivered the following week. Mergerson told Harrington and Battiste that the "sky was the limit" for him and that he could get as much heroin as they wished.

The appellants next argue that the one-kilogram figure should not be used in the Guidelines calculations at all because Mergerson's statements about being able to provide a kilogram were mere "puffing" and that in fact he could not actually produce that quantity of drugs. Anunaso relies on U.S.S.G. § 2D1.4 commentary which provides:

> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was *not reasonably capable of producing the negotiated amount*, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing. (emphasis added).

See also United States v. Garcia, 889 F.2d 1454, 1456-57 (5th Cir 1989), cert. denied, 494 U.S. 1088 (1990). Mergerson's prior deliveries and promises for future deliveries, when taken in conjunction with the narcotics transaction notes found at Anunaso's apartment, are evidence from which a fact-finder could reasonably determine that Mergerson had both the intent and

19

ability to produce the negotiated amount.[7] Thus, the district court's finding regarding the applicable drug quantity for sentencing purposes was not clearly erroneous.

## ii. The district court's quantity finding for purposes of Mergerson's mandatory life sentence on count one

In order to sentence Mergerson to a mandatory life term of imprisonment under 21 U.S.C. §§ 841(a)(1)(A)(i) & 846, the district court had to find by a preponderance of the evidence that Mergerson actually possessed or conspired with Anunaso to actually possess over a kilogram of heroin during the conspiracy alleged in count one of the Government's indictment.[8] Mere proof of the amounts "negotiated" with the undercover agents -- including the kilogram of heroin discussed immediately, supra -- would not count toward the quantity of heroin applicable to the conspiracy count.[9]

---

[7] Simply because Mergerson was unable to produce the full kilogram on September 11, 1991, does not mean that he was not *ultimately* capable of producing it.

[8] During the sentencing hearing, the district court appeared to say that only amounts actually possessed with the intent to distribute -- as opposed to amounts that were part of a conspiracy to possess with the intent to distribute, but never actually possessed -- could be considered in sentencing under § 841(b)(1)(a). This is also the position taken by Mergerson on appeal. We disagree. A mandatory life sentence is permissible so long as there is even a conspiracy to possess with the intent to distribute (assuming that all other statutory requirements are met). See United States v. McGlory, 968 F.2d 309, 346 & n.25 (3d Cir. 1992); United States v. Frazier, 936 F.2d 262, 266 (6th Cir. 1991).

[9] It is axiomatic that a criminal cannot conspire with undercover law enforcement officials. See United States v. Enstam, 622 F.2d 857, 867 (5th Cir. 1980); see also United States v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989). Thus, the one

20

It is essentially undisputed that Mergerson actually possessed approximately 450 grams of heroin, the quantity actually distributed to the agents.  The only other evidence offered by the Government to support its allegation that Mergerson conspired to possess over a kilogram of heroin with the intent to distribute was a small, undated piece of paper with handwritten notes that, the Government argues, refer to narcotics transactions.  That piece of paper was seized during a search of Anunaso's apartment.  In addition to a substantial amount of indecipherable writings and a telephone number, the paper contains the name "MERK" and a series of numbers written as follows:


*825368*

*1360*

*MERK    8 -- 500 -- 860*
                                    */*
                                *500 -- 360*


The Government interprets this series of notations to represent various agreements between Mergerson and Anunaso to possess heroin for the purpose of distributing it.  In particular, the Government contends that the *360* "corresponds" to the 350 grams of heroin that Mergerson stated was available for

---

kilogram of heroin that Mergerson negotiated with the undercover agents cannot be considered to be a part of the conspiracy alleged in count one of the indictment.

delivery on September 11, 1991.[10]  The Government hypothesizes that the **1360** represents the total amount of heroin distributed by Mergerson during the conspiracy and that the two **500**'s were distributed by Mergerson to unidentified parties other than the undercover agents.  For purposes of sentencing Mergerson under § 841(a)(1)(A)(i), the district court accepted the Government's theory and found that 1360 grams were actually possessed by Mergerson with the intent to distribute.

We believe that the district court clearly erred in accepting the Government's interpretation of the piece of paper for purposes of sentencing Mergerson to a mandatory term of life imprisonment.  To begin with, we believe that the piece of paper, besides the reference to Mergerson's nickname "Merk," is of extremely slight probative value regarding proof of the quantity of heroin used in the conspiracy alleged in count one of the indictment.  The writings on the paper do not in any way refer to heroin.  It is undisputed that Mergerson also dealt in at least one other drug, i.e., cocaine.  Furthermore, there is no proof that the numbers are references to grams.  The numbers could just as easily refer to dollar amounts.  Nor is there any mention of dates of the alleged transactions.  Count one of the indictment specifically limits the charged conspiracy to the period from August 18, 1991, to September 11, 1991.

In sum, we hold that the district court clearly erred in finding that Mergerson possessed over a kilogram of heroin with

---

[10] In fact, Mergerson only delivered 334.8 grams of heroin.

the intent to distribute.  We further believe that the district court would have likewise erred in finding that Mergerson conspired to possess over a kilogram of heroin with the intent to distribute.  Therefore, we vacate Mergerson's mandatory life sentence imposed for his conviction on count one and remand for resentencing.


**D. Did the district court err in its determination of the respective roles of each defendant in the offenses?**

The district court determined, based upon the information in the presentence investigation report (PSI), that each defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," see U.S.S.G. § 3B1.1(a), and assessed a four-level increase in the offense level pursuant to that provision of the Guidelines. Mergerson and Anunaso argue that the four-level increases in their respective sentences were erroneous.  We have repeatedly held that "[a] reviewing court will disturb a district court's factual finding regarding sentencing factors only if those findings are clearly erroneous."  United States v. Whitlow, 979 F.2d 1008, 1011 (5th Cir. 1992); United States v. Franco-Torres, 869 F.2d 797, 800 (5th Cir. 1989).  A factual finding is not clearly erroneous so long as it is plausible in light of the record read as a whole.  See United States v. Fields, 906 F.2d 139, 142 (5th Cir.), cert. denied, 111 S.Ct. 200 (1990); Whitlow, 979 F.2d at 1011.  Both Anunaso and Mergerson assert that the district court's failure to specify the "five or more

23

participants" involved in the criminal activity was error which justifies vacating the sentence and remanding for resentencing. The appellants rely on United States v. Schweihs, 971 F.2d 1302 (7th Cir. 1992). In Schweihs, the Seventh Circuit held, in construing U.S.S.G. § 3B1.1(a), that the district court must identify the five (or more) participants and determine whether the defendant exhibited leadership or control over all five (or more) of them. Id. at 1318.

The Government argues that we need not reach the appellants' argument here because the four-level increase was justified on the independent ground that the criminal activity was "otherwise extensive," U.S.S.G. § 3B1.1(a), even if the district court erred by not specifically finding the existence of five (or more) individuals over whom the two defendants had control.[11] We agree that there is ample evidence that Mergerson and Anunaso's drug

---

[11] The Government also contends that the district court had before it ample evidence -- including the drug transaction notes and recordings of messages left by Mergerson and others on Anunaso's telephone answering system regarding various drug transactions -- that supported the district court's finding that there were five or more participants. We note that, although the appellants' specific reliance on the Seventh Circuit's opinion in Schweihs appears to be foreclosed by this court's decision in United States v. Barbontin, 907 F.2d 1494, 1497-98 (5th Cir. 1990) ("the identities of the transactional participants need not be expressly proved"), Barbontin requires that the district court may only consider unidentified participants when there is proof that they were "involved in the *precise transaction* underlying the conviction." Id. (emphasis in original). The district court never made such a specific finding in the instant case. However, because we affirm the district court's alternative finding that the conspiracy was "otherwise extensive," we need not require resentencing pursuant to § 3B1.1(a).

trafficking activities were "otherwise extensive."[12]  Mergerson

admitted to controlling the activities of "several girls" who

distributed heroin for him.  Anunaso served as the source of

heroin to Mergerson and others, including "Spencer" and "Beneda."

The amount and street value of the heroin negotiated in the

instant case was also extremely large.  Moreover, there was

undisputed evidence that this case involved the distribution of

high-purity heroin.[13]  Based on the totality of the evidence, we

uphold the district court's § 3B1.1(a) increase in both

appellants' cases.


**E. Was the evidence sufficient to support Mergerson's conviction on the firearm count?**

Mergerson was convicted of count five of the indictment,

---

[12] In making its findings during sentencing, the district court specifically stated, "I now find and conclude that [the co-defendants'] activity involved  five or more participants and, as well, as a separate finding, that it was otherwise extensive as to each one."

[13]  Such evidence is another basis on which to find "otherwise extensive" criminal activity.  As the Sentencing Commission has stated:

> The purity of the controlled substance, particularly in the case of heroin, may be relevant to the sentencing process because it is probative of the defendant's role or position in the chain of distribution. *Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs.*

U.S.S.G. § 2D1.1, Application Note 9 (emphasis added).

which charged him with being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). On appeal, Mergerson claims that the evidence was insufficient to prove one of the elements of § 922 -- namely, that he was *in possession* of the firearm. The weapon, a handgun, was found between the mattress and boxsprings of the bed in a bedroom in the residence in which Mergerson occupied. Mergerson stipulated that he had lived at the residence with his girlfriend and co-defendant, Sheila Guy, for approximately a month before his arrest.[14] The evidence is essentially undisputed that Mergerson and Guy were cohabiting in the apartment and shared the bedroom in which the gun was found.[15] Also introduced at trial was a pawnshop receipt showing that the weapon was purchased by Guy well before the time that Mergerson moved into the residence.

It is well-established that possession may be actual or constructive. See United States v. Smith, 930 F.2d 1081, 1085 (5th Cir. 1991); United States v. Posner, 868 F.2d 720, 723 (5th

---

[14] Outside of the presence of the jury, the defense proffered testimony from Mergerson's trial attorney, who claimed that Guy had told him the day before that she was the lessee of the apartment and had lived there before Mergerson moved in. Guy also allegedly stated that she not only owned the weapon, but also that Mergerson had no knowledge of it. The district court refused to admit that testimony. However, because Mergerson's trial attorney's testimony was not admitted into the evidence before the jury, we cannot consider it for purposes of our sufficiency review. See Holloway v. McElroy, 632 F.2d 605, 609 n.6 (5th Cir. 1981) ("We consider only his testimony before the jury, of course, in reviewing the sufficiency of the evidence."); cf. Crutchfield v. State, 812 S.W.2d 459 (Ark. 1991).

[15] There were only two bedrooms in the residence. The one in which the gun was found contained adult male and female clothing; the other bedroom contained children's clothing.

Cir. 1989). This is clearly a case in which the Government has attempted to prove constructive possession. "`Constructive possession' has been defined as ownership, dominion, or control over the contraband itself *or* dominion or control over the premises in which the contraband is concealed." Smith, 930 F.2d at 1085. In the instant case, the Government argues that the fact that Mergerson was living in the bedroom in which the weapon was found is enough to establish constructive possession. We disagree. Instead, we believe that mere control or dominion over the place in which contraband or an illegal item is found *by itself* is not enough to establish constructive possession when there is joint occupancy of a place.

Numerous other courts have addressed this precise question and held that "[w]here . . . a residence is jointly occupied, the mere fact that contraband is discovered at the residence will not, without more, provide evidence sufficient to support a conviction based upon constructive possession against any of the occupants." United States v. Reese, 775 F.2d 1066, 1073 (9th Cir. 1985) (citations omitted); accord United States v. Ford, ___ F.2d ___, ___, 1993 U.S. App. LEXIS 12086 at *9 (D.C. Cir. May 25, 1993) ("[I]n cases in which contraband or firearms are discovered in a place occupied by more than one person, the Government must establish `the likelihood that in some discernible fashion the accused had a voice vis-a-vis' the items in question.") (citations omitted); United States v. Bonham, 477 F.2d 1137, 1138-39 (3d Cir. 1973) (en banc) (co-defendant did not

27

have constructive possession over heroin hidden in bedroom shared with half-brother when Government's only evidence linking him to heroin was joint occupancy of room).  Although we do not adopt the "affirmative link" test adopted by some of these courts, see, e.g., Reese, 775 F.2d at 1073 (requiring there to be some "affirmative link" between defendant and contraband or weapon in order to establish constructive possession),[16] we do believe that something else (e.g., some circumstantial indicium of possession) is required besides mere joint occupancy before constructive possession is established.

In our previous joint occupancy cases, this court has adopted a "commonsense, fact-specific approach" to determining whether constructive possession was established.  Smith, 930 F.2d at 1086.  We have found constructive possession in such cases only when there was some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband.  See, e.g., United States v. McKnight, 953 F.2d 898, 902 (5th Cir. 1992) (weapon was found in plain view); Smith, 930 F.2d at 1086 (same).  In the instant case, the weapon was not in plain view[17] and there were no other circumstantial indicia that established that Mergerson even knew of the weapon.

_____

[16] We have previously refused to adopt the "affirmative link" test.  See United States v. Smith, 930 F.2d 1081, 1086 (5th Cir. 1991).

[17] Although we have previously held that constructive possession was established by evidence that a weapon was found, as in the instant case, between the mattress and boxsprings of a bed, see United States v. Munoz-Romo, 947 F.2d 170, 177 (5th Cir. 1990), that case was not a joint occupancy case.

28

Indeed, there was evidence to the contrary -- namely, the pawnshop receipt that showed that Sheila Guy was the owner of the weapon.

Thus, we hold that the evidence supporting Mergerson's conviction on the fifth count of the indictment is constitutionally insufficient. The Government may not retry Mergerson on that count. See Burks v. United States, 437 U.S. 1 (1978).[18]

**F. Did the district court err in finding that Anunaso and Mergerson possessed a firearm during the commission of a drug offense for purposes of U.S.S.G. § 2D1.1(b)(1)?**

The district court applied U.S.S.G. § 2D1.1(b)(1) and assessed a two-level increase for Anunaso's possession of a firearm during the commission of the drug offenses. The government must prove possession by a preponderance of the evidence before the court can apply the two-level increase under § 2D1.1(b)(1). See United States v. Aguilera-Zapata, 901 F.2d 1209, 1215 (5th Cir. 1990).

The Government may prove that the defendant personally possessed the weapon by showing that a temporal and spatial relationship existed between the weapon, the drug trafficking activity, and the defendant. See United States v. Hooten, 942

---

[18] Because we have found that the conviction on count five must be reversed on insufficiency grounds, there is no need to reach Mergerson's claim that his conviction on count five should also be reversed in view of the district court's exclusion of Mergerson's trial counsel's testimony about statements allegedly made by Sheila Guy.

F.2d 878 (5th Cir. 1991); <u>United States v. Suarez</u>, 911 F.2d 1016, 1018 (5th Cir. 1990). Generally the Government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred. <u>United States v. Blankenship</u>, 923 F.2d 1110, 1115 (5th Cir.), <u>cert. denied</u>, 111 S.Ct 2262 (1991); <u>Hooten</u>, 942 F.2d at 882; <u>United States v. Otero</u>, 868 F.2d 1412, 1414 (5th Cir. 1989).

The DEA agents found a gun during their search of Anunaso's residence. The fact that Mergerson left Anunaso's apartment shortly before he delivered the 334.8 grams of heroin, taken together with the fact that the officers discovered, on the same day, Anunaso's loaded gun at the apartment creates a spatial and temporal connection between the weapon and the offense. We do not believe that the district court's finding was clearly erroneous.

With respect to the two-level increase assessed to Mergerson's offense level, the district court found that the increase was proper in view of *either* the weapon found within Mergerson's residence *or* the weapon found in Anunaso's apartment. Because we have previously found that there was insufficient evidence to establish that Mergerson had constructive possession of the firearm found in his residence, we will only review the district court's application of § 2D1.1(b)(1) regarding Anunaso's gun. This court has previously held that one co-conspirator may ordinarily be assessed a § 2D1.1(b)(a) increase in view of

30

another co-conspirator's possession of a firearm during the drug conspiracy so long as the use of the weapon was reasonably foreseeable.  See United States v. Aguilera-Zapata, 901 F.2d 1209, 1215-16 (5th Cir. 1990).  Ordinarily, one co-conspirator's use of a firearm will be foreseeable because firearms are "tools of the trade" in drug conspiracies.  Id.  At the sentencing hearing, the district court specifically found that Anunaso's use of the weapon was reasonably foreseeable by Mergerson.  We do not believe that the district court's finding was clearly erroneous.  Thus, we affirm the district court's decision to assess § 2D1.1(b)(1) increases in sentencing both Mergerson and Anunaso.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM all of Anunaso's convictions and corresponding sentences.  We AFFIRM Mergerson's convictions on counts one through four of the indictment but REVERSE his conviction on count five of the indictment on the ground that the evidence was constitutionally insufficient.  We further AFFIRM Mergerson's sentences on counts two through four, but VACATE Mergerson's sentence for his conviction on count one. We REMAND to the district court for resentencing on count one.

31