**UNITED STATES of America, Plaintiff,**

v.

**Edward TRASKA, Defendant.**

**No. 93 CR 1134 (ERK).**

United States District Court,
E.D. New York.

Oct. 11, 1995.

Zachary W. Carter, U.S. Atty., Eastern District of New York by Raymond Granger, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

Jeremy Gutman, New York City, for defendant.

### MEMORANDUM & ORDER

KORMAN, District Judge.

During the course of the trial of this case, the defendant's son testified to a conversation with the defendant in which the latter transferred possession of firearms to his son. If credited by the jury, this statement constituted the centerpiece of the defense that a stash of firearms found in a garage leased by the defendant belonged to his son and not to the defendant.[1] In a post-trial memoran-

dum, I set forth in more detail the underlying facts and my reasons for holding that, because the statement being impeached was the statement of the defendant, rather than that of the witness, it could be so used even if it was the fruit of an illegal search of his apartment. *United States v. Trzaska,* 885 F.Supp. 46 (E.D.N.Y.1995).

The defendant now seeks reconsideration of that decision. In a memorandum filed by newly appointed counsel, he argues that illegally seized evidence can be used to impeach the testimony of a defendant only if it "directly contradicts" the statement that it is intended to impeach. In support of the proposition that evidence which circumstantially undermines the credibility of the defendant's statement is not admissible, the defendant cites to dictum in *James v. Illinois,* 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990), which describes, as follows, the rule permitting illegally seized evidence to be used to impeach the testimony of the defendant:

> [T]he exception leaves defendants free to testify truthfully on their own behalf; they can offer probative and exculpatory evidence to the jury without opening the door to impeachment by carefully avoiding any statements that *directly contradict* the suppressed evidence.

493 U.S. at 314, 110 S.Ct. at 652–53 (emphasis added).

In *James v. Illinois,* the Supreme Court was addressing the issue whether the testimony of a witness other than the defendant could be impeached with illegally seized evidence. Because the Supreme Court held that such testimony could not be used, it had no occasion to rule on whether the exception to the exclusionary rule permitting impeachment of a defendant was limited only to illegally seized evidence that directly contradicted the defendant's testimony.

The reason underlying the rule that would so limit the use of illegally seized evidence

---

1. I assume for present purposes, as defendant did at trial, that, if the jury credited this testimony, he would have been entitled to prevail. In retrospect this proposition may not be as clear as the defendant assumed. *See United States v. Mergerson,* 4 F.3d 337, 349 (5th Cir.1993) (holding that constructive possession suffices to establish guilt of a violation of 18 U.S.C. § 922(g)(1) where there is "some evidence supporting at least a plausible inference that a defendant had knowledge of and access to the weapon ...").

may be briefly summarized as follows: If a defendant takes the stand and testifies that he is innocent, a rule permitting the use of illegally seized evidence that would show that the defendant was guilty would effectively eliminate the exclusionary rule from the case. In essence, a defendant who exercised his right to testify in his own behalf would forfeit his right to exclude illegally seized evidence at his trial. *See United States v. Havens*, 446 U.S. 620, 632, 100 S.Ct. 1912, 1919, 64 L.Ed.2d 559 (1980) (Brennan, J dissenting). Accordingly, in order to avoid overly chilling a defendant's right to testify in his own behalf, it is essential to allow him to avoid the use of illegally seized evidence "by carefully avoiding any statements that directly contradict the suppressed evidence."

The policy consideration which may have once limited the use of illegally seized evidence to impeach the testimony of a defendant has been rejected in *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). The Supreme Court there held "that a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained ..." *Id.* at 627–28, 100 S.Ct. at 1917. The defendant could no longer limit the use of illegally seized evidence by carefully circumscribing his direct testimony. Indeed, in his dissenting opinion in *Havens*, Justice Brennan accused the majority of "unleashing ... a hitherto relatively confined exception to the exclusionary rule." *Id.* at 632, 100 S.Ct. at 1919. Specifically referring to the prior holdings of the Supreme Court in *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925) and *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), Justice Brennan wrote that the holding in *Havens* "simply trivializes those decisions by transforming their Fourth Amendment holdings into nothing more than a constitutional reflection of the common-law evidentiary rule of relevance." *Id.* at 632, 100 S.Ct. at 1919.

Under the holding in *Havens*, if the defendant had taken the witness stand to testify that he had given the firearms found in his garage to his son and that they did not belong to him, the prosecutor could have asked the defendant whether he had a narcotic-like addiction to firearms. The question would be relevant, because an affirmative answer to such a question would have undermined the defendant's claim that he had intended to relinquish possession or control of the firearms. On the other hand, if the defendant answered the question in the negative and then denied making the statement that he had a narcotic-like addiction to firearms, proof that he made such a flatly inconsistent statement would plainly be admissible.

Because the defendant did not testify here, there was no occasion to go through the foregoing exercise which would have elicited a response contrary to the defendant's trial testimony or an admission that would have made unnecessary the use of that statement. Nevertheless, the defendant should not be in a position to preclude the use of his prior statement on the ground that it does not directly contradict the declarations attributed by his son. The reason there is no such contradiction is because the defendant has effectively shielded himself from cross-examination that would have elicited it. It is for this reason that Fed.R.Evid. 806, which permits the use of prior inconsistent statements to impeach a hearsay declarant, provides that "[e]vidence of a statement ... by the declarant at anytime, inconsistent with his hearsay statement is not subject to any requirement that he may have been afforded an opportunity to deny or explain."

Under these circumstances, the admissibility of the prior inconsistent statement to impeach the declaration attributed to the defendant by his son should not turn on whether it directly contradicts that statement.

It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it sought to contradict.

*Commonwealth v. West*, 312 Mass. 438, 440, 45 N.E.2d 260 (1942), quoted with approval in *United States v. Barrett*, 539 F.2d 244, 254

(1st Cir.1976); *United States v. Agajanian,* 852 F.2d 56, 58 (2d Cir.1988); 3 David Louisell and Christopher B. Mueller, *Federal Evidence,* § 356, at 549–50 (1979). This test has been satisfied here.

Accordingly, the part of the defendant's motion for a new trial, which is predicated on the use of the defendant's otherwise inadmissible statement for the purpose of impeachment, is denied.

SO ORDERED.