United States Court of Appeals
Fifth Circuit

**F I L E D**

May 4, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-20404

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALFRED HORACE,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas
H-CR-05-369

Before KING, DAVIS and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Horace was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and sentenced to 40 months confinement plus a term of supervised release. In this appeal, Horace challenges his conviction on a number of grounds. We affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

During daylight hours on May 6, 2005, Houston police officers Hassan and Saucedo responded to a call reporting a gang disturbance or fight in progress at the Premier Apartments in Houston. Upon their arrival they saw two males and two females arguing at the end of the parking lot near a parked maroon Ford Thunderbird.

The two males fled and the officers gave chase. When the officers were unsuccessful in catching the two men, they returned to their patrol vehicle which was near the Ford Thunderbird. When they returned, they saw the same two men nearby. One of the men was the defendant, Horace. The officers saw that he was holding a pistol in his hand. Horace was standing near the driver's side of the Ford Thunderbird.

The second male, who was standing on the opposite side of the vehicle, alerted Horace to the officers' presence. Horace then turned, looked at the officers then leaned toward the open window and placed both hands into the Ford. When his hands came out of the vehicle, he no longer held the pistol. Horace then walked quickly away. Officer Hassan ran after Horace and within seconds, Officer Hassan saw Horace after he rounded a corner and ordered him to the ground. Horace complied and was handcuffed by Officer Saucedo. Officer Saucedo patted Horace down to be certain there was no other weapon. Officer Saucedo then checked the Ford Thunderbird and found a Browning semiautomatic pistol on the

2

driver's seat. The parties stipulated that Horace was a felon before May 2005, and that the pistol had traveled in foreign commerce before its arrival in Texas.

At trial the defendant's primary argument was that the gun was not his but rather was possessed by the other male who was with him that afternoon who went by the nickname, Red. The defendant also produced evidence that Red had been seen earlier that day driving the Ford and in fact had been seen in this area in the Ford on several occasions. One witness testified that he saw Red carrying a pistol at one time that appeared to be a revolver.

The defendant raises a number of claims of error which we will discuss below.

## II.

### A.

The defendant argues first that the district court abused its discretion in charging the jury on constructive and joint possession. He argues that the only evidence of possession was the officers' testimony that Horace held the pistol in his hand and that this was direct evidence of actual possession. He argues that the charge on a theory of constructive possession allowed the jury to convict Mr. Horace based on this erroneous jury instruction and is grounds for reversal.[2]

---

[2]The charge the court gave to the jury is as follows:

"Possession", as this term is used in th[e] case, may be of

We review a district court's decision to give or exclude a jury instruction for abuse of discretion. United States v. Ragsdale, 426 F.3d 765, 779 (5th Cir. 2005). "A district court has broad discretion in framing the instructions to the jury and this court will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law." United States v. Dien Duc Huynh, 246 F.3d 734, 738 (5th Cir. 2001).

The trial court's charge must not only be legally accurate but also factually supportable, and the court may not instruct the jury on a charge that is not supported by the evidence. United States v. Mendoza-Medina, 346 F.3d 121, 132 (5th Cir. 2003). Any error is subject to harmless error review. Id.

Horace makes no argument that the district court's instructions on constructive and joint possession are an incorrect statement of the law. He simply argues that the evidence does not

---

two kinds: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

Possession may be "sole" or "joint." If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

support the instruction.

Following an objection by defense counsel and lengthy exchange between counsel and the court, the trial court accepted the government's argument that when the defendant ran away from the car the first time and returned and placed the pistol in the car, this represented circumstantial evidence that he intended to associate himself with the car and the gun he left in the car. The court concluded that the jury could infer that the defendant had access to the vehicle based on this evidence. The court concluded therefore that the government was entitled to argue that after Horace walked away from the car where he left the pistol, he continued to have constructive possession of the weapon. The court informed defense counsel that whether Horace had access to the vehicle was a permissible inference. The court informed defense counsel that he was also entitled to make a contrary argument and contend that the defendant abandoned the pistol when he left it in the car.

Our review of the record persuades us that the district court did not abuse its discretion in charging the jury on constructive and joint possession. No evidence was produced as to who owned the car or what the legal relationship was between Horace and the car or Red and the car. But, the jury was entitled to find that the evidence of Horace's association with the car along with his concealment of a gun in the car raised an inference that he had the right to exercise some degree of control over the car. This

5

satisfies our definition of constructive possession as "the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found." United States v. DeLeon, 170 F.3d 494, 496 (5th Cir. 1999). We also stated that "in determining what constitutes dominion and control over an illegal item, this court considers not only the defendant's access to the [place] where the item is found, but also whether the defendant had knowledge that the illegal item was present." Id. at 497.

The evidence also supports the joint possession charge. Horace argued that the gun did not belong to him but rather it belonged to Red, the other man with him that evening. Both men were associated with the Ford Thunderbird. This evidence would support a verdict that Horace and Red were in joint possession of the firearm. The defendant's reliance on United States v. Mergerson, 4 F.3d 337 (5th Cir. 1993), is misplaced. In Mergerson, we held that the defendant must have both knowledge of and access to the weapon in order to be convicted under constructive possession theory of liability. Id. at 349. Both were present in this case.

**B.**

Horace argues next that the conviction should be reversed because the government engaged in an improper closing argument. He contends that the prosecutor (l) improperly asked the jury to

enforce the law, (2) unfairly attacked his character, (3) improperly vouched for the credibility of his own witnesses, (4) improperly expressed his own opinion about the credibility of the witnesses and (5) improperly shifted the burden of proof to him.

We review a claim of prosecutorial misconduct in two steps: first we must initially decide whether or not the prosecutor made an improper remark. United States v. Gallardo-Trapero, 185 F.3d 307, 320 (5th Cir. 1999). "If an improper remark was made [we] . . . must then evaluate whether the remark affected the substantial rights of the defendant." Id.

Horace only made a timely objection to the first challenged comment by the prosecutor. His remaining challenges are reviewed for plain error only. United States v. Harms, 442 F.3d 367, 378 (5th Cir. 2006). Even when the objection is preserved, "the determinative question in such an inquiry is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." United States v. Guidry, 456 F.3d 493, 505 (5th Cir. 2006). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." Id. In determining whether inappropriate prosecutorial argument warrants reversal, we must weigh "(1) the magnitude of the prejudicial effect, (2) the efficacy of any cautionary instruction and (3) the strength of the evidence supporting the defendant's guilt." United States v. Newell, 315 F.3d 510, 527 (5th Cir. 2002).

7

## 1. Improper Plea for Law Enforcement.

Horace points to the following passage from the prosecutor's argument:

> Now in situations like these in cases like this where you're brought the facts that we have in this case, facts that clearly show the defendant is guilty of what he did, when that situation occurs, you people are the only folks in this courtroom who can actually enforce the law. The police officers, all they can do is arrest people. They can investigate people. We can prosecute people, but in the end when you're given facts that show[s] somebody guilty, you're the only folks who can ultimately enforce the law–

Defense counsel immediately objected and the court sustained the objection and gave the jury a careful cautionary instruction.[3]

We are satisfied that any suggestion of impropriety was cured by the district court's cautionary instruction. See United States v. Duffaut, 314 F.3d 203, 211 (5th Cir. 2002).

---

[3] Ladies and gentlemen, your job is to serve as judges of the facts. The only thing that is relevant to you is, has the government proved beyond a reasonable doubt in all of your minds that the defendant knowingly possessed the weapon involved. That's the issue.

And you don't have an obligation to be out there as a posse or law enforcement group. You don't have an obligation to do anything but determine what the government has or has not proven.

So you may disregard–you must disregard any appeal about you enforcing the law. Your job is to apply the law that I have given you. You have an oath to do that. The oath requires that you consider the elements that I have explained to you and the evidence that has been presented to you after you weigh the evidence and decide who you believe and what importance to give that evidence.

## 2. Alleged improper attack on Horace's character.

In the initial segment of the prosecutor's closing argument he suggested that a defense witness, Lisa Sherman, had a motive to lie. Lisa Sherman lived in the apartment complex where the arrests were made and testified as an eyewitness to a version of events very different from that described by the police. The prosecutor stated:

> Maybe she might be a little afraid of those folks? She's got kids. Maybe she might be afraid. Maybe she might want to come in here-she's asked to come and testify. Do you think she's willing to come in here and say, "He had a gun. They're bad." And all that? No. She has a motive not to tell the truth. She has a motive in it? No. Whatever you think about that motive, she's got kids. Maybe she's trying to protect them. I don't know, but that's a motive for her not to tell the truth in this situation.

Defense counsel interpreted the prosecutor's argument as suggesting that Sherman was afraid of Red. When the prosecutor made the final segment of his closing argument, he responded to this by saying two experienced police officers had no reason to lie and there is no evidence they lied. He then stated:

> But there is, through reasonable inference, evidence that Ms. Sherman has a reason to lie. We talked about it earlier. The defense would suggest to you that well, if the person she's scared – the only person she should be scared of is Red. Well, who's hanging out with Red? The defendant. Who's not here? Red. Who's here? The defendant, Red's buddy, I mean, who is she going to be scared of in this courtroom? It's going to be Mr. Horace.

The prosecutor's argument that Sherman may have harbored some

9

fear of Red and therefore of his companion Horace, is not totally unfounded. The government presented evidence that Red, who did not live in the apartment complex with Sherman, frequently visited there and that the police had been called on at least one occasion to the apartment complex because of Red's interference with a tenant's access to his apartment. Sherman testified that she heard Red refer to his gun while she was walking with her children and another defense witness saw Red in possession of a gun while he was at the apartment complex. The jury could have found that the witness knew that Horace and Red were associated together. No plain error is demonstrated.

## 3.

We have made a careful review of the record in connection with Horace's remaining arguments of improper closing argument and find no plain error was demonstrated.

## C.

Horace argues finally that the statute under which Horace was prosecuted, § 922(g)(1) is unconstitutional because it does not require substantial connection to interstate commerce but rather requires only some effect on interstate or foreign commerce. Alternatively, defendant argues that there is an insufficient factual basis for conviction because the mere movement of a firearm from one state to another at some undetermined time in the past does not constitute a substantial effect on interstate commerce.

10

Horace acknowledges that this court has rejected the argument made here. See United States v. Daugherty, 264 F.3d 513 (5th Cir. 2001). This issue is therefore foreclosed by circuit authority.

**D.**

Horace argues finally that the conviction must be reversed due to the cumulative effect of the errors in this case. After reviewing the record, we are satisfied that the cumulative effect of any errors committed in this case do not warrant reversal.

AFFIRMED.

11