**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William WHITLOW, Defendant–
Appellant.**

**No. 92–2144
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1992.

Roland Brice Moore, III, Houston, Tex. (court-appointed), for defendant-appellant.

Ken Jost, Dept. of Consumer Litigation, Washington, D.C., Paula Offenhauser, Asst. U.S. Atty., Ronald G. Woods, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:

William Whitlow appeals the sentence he received following his plea of guilty of conspiracy, odometer tampering, failing to retain records, and interstate transportation of forged and altered securities, in violation of 15 U.S.C. §§ 1984, 1988, and 1990c and 18 U.S.C. §§ 2, 371, and 2314. Finding no error, we affirm.

I.

Whitlow was a wholesale used-car dealer in Houston, Texas. The National Highway Traffic Safety Administration (NHTSA), in March 1990, received a complaint about odometer-tampering by Whitlow; later in 1990, the CBS television show "60 Minutes" investigated him.

On November 1, 1990, a gunman fired shots into the Houston car-leasing business of Charles Vance, who had assisted the "60 Minutes" investigation of Whitlow. Larry Scott Bennett, an employee of Whitlow, was arrested and later convicted of retaliation against Vance. Bennett confessed that Whitlow and Travis Barnes, another used-car dealer, had expressed willingness to pay $500 to anybody who would retaliate against Vance.

Whitlow and Barnes suggested that somebody shoot into Vance's home. Whitlow asked Bennett to drive him to Vance's residence. Whitlow showed Bennett where he could park and how he could shoot into Vance's residence and escape undetected. Whitlow left his pistol in the back seat of the vehicle. Bennett later fired the shots into Vance's place of business.

The "60 Minutes" episode featuring Whitlow aired in December 1990. NHTSA then began a formal investigation of Whitlow's odometer-tampering practices.

Whitlow operated three wholesale used-car dealerships in Houston between 1986 and 1991. Around ninety percent of the vehicles sold by those dealerships had altered odometers. NHTSA estimated that Whitlow altered the odometers of 1,500–2,500 automobiles.

Whitlow instructed his buyers to locate late-model, high-mileage cars. He would purchase those cars in the names of his "floorplanners," Jamal Nickmard, Doug Noack, and Bobbie Barrington. Whitlow and buyer Jerry Don Branson then would determine how much they could roll back the odometers. They improved the cars cosmetically and sent them to "spinners,"

who actually altered the odometers. Timothy Bryson, Monroe Kirkpatrick, Robert Sprague, and other, unnamed individuals worked as "spinners" for Whitlow.

Whitlow employed Liz Whitley and Pamela Rochford to alter title documents, then sold the altered cars and delivered the altered titles to car dealerships. Some used-car managers accepted "dukes" (inducements) to purchase Whitlow's cars. Whitlow also sold cars to Les Cornmesser, a California used-car dealer who was involved in Whitlow's odometer-tampering scheme.

Whitlow, Branson, and Cornmesser, in September 1990, told Barrington not to "make waves" about the odometer-tampering scheme. Barrington later complained to police that Whitlow phoned 15–20 times and threatened to kill her. Police arrested Whitlow; in the back seat of his car, they found the pistol that had been used to fire into Vance's business.

Whitlow pleaded guilty of conspiracy, odometer-tampering, failing to retain certain records, and interstate transportation of forged and altered securities. The probation officer found that the average price paid by Whitlow's victims for their cars was $10,450 and that the average amount those victims could recover was $1,635. She thus calculated the loss per vehicle as $8,800. Finding that Whitlow adjusted at least 1,500 odometers, she calculated the total loss as $13,222,500. She thus added 15 levels to Whitlow's base offense level of six. *See* U.S.S.G. §§ 2F1.1(b)(1)(P), 2N3.1(b)(1).

The probation officer added four additional levels because she found that Whitlow was the leader and organizer of the odometer-tampering scheme; two levels because the scheme involved more than minimal planning by Whitlow; and two levels for obstruction of justice because of the incidents involving Vance and Barrington. The probation officer thus arrived at a total offense level of 29. The probation officer calculated Whitlow's criminal history score as four, thus placing Whitlow in criminal history category III.

The district court determined the amount of loss per car as $4,000 and calculated the total amount of loss as $6,000,000. It thus added fourteen levels to the base offense level for amount of loss. The court added two levels for more than minimal planning; four levels for Whitlow's role as an organizer or leader; and two levels for obstruction of justice. The district court subtracted two levels for acceptance of responsibility and arrived at a total offense level of 26. The court sentenced Whitlow to four concurrent 36–month sentences and concurrent 60– and 84–month sentences. It also prohibited Whitlow from employment in the used-car industry while on supervised release.

## II.

### A.

Whitlow contends first that the district court improperly adjusted his offense level upward by four levels because he was a leader and organizer of the odometer-tampering scheme. Whitlow contends that, because he was sentenced to the maximum terms of imprisonment on three counts of conviction before any adjustment, the adjustment applies only to the remaining transportation-of-forged-securities charge. Whitlow asserts that only two people, Whitley and Rochford, helped him falsify car titles.

■ The probation officer considered the roles of Whitlow, Branson, Bryson, Rochford, and Cornmesser when it found that Whitlow was a leader and organizer of the odometer-tampering scheme. Whitlow objected to the leader/organizer adjustment only at the sentencing hearing. His objection to the presentence investigation report (PSI) was based solely upon his attorney's assertion that

[t]his was just a hodgepodge thrown together situation. And he was not actually the leader. I don't think there was really a leader. And he says everybody except his daughter, Roc[h]ford, voluntarily participated in these activities freely and fully, and that he was not a leader

but just kind of a coming together of the people.

We do not consider objections in the form of unsworn assertions. *United States v. Lghodaro,* 967 F.2d 1028, 1030 (5th Cir. 1992). Whitlow therefore failed to raise a viable issue regarding the leader/organizer adjustment.

Moreover, the record supports the leader/organizer adjustment. The sentencing guidelines direct district courts to increase a defendant's offense level by four "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The criminal activity to which the court looks must be "anchored to the transaction leading to the conviction." *United States v. Barbontin,* 907 F.2d 1494, 1498 (5th Cir.1990). The transaction is "outlined by the 'contours of the underlying scheme itself' rather than merely of 'the offense charged.' ... Thus, the sentencing court, in making an adjustment under § 3B1.1, may 'consider all conduct linked to the transaction [as defined above], even if it falls outside the four corners of the conviction itself.' " *United States v. Rodriguez,* 925 F.2d 107, 111 (5th Cir.1991) (quoting *United States v. Mir,* 919 F.2d 940, 945–46 (5th Cir.1990)).

■ A reviewing court will disturb a district court's factual findings regarding sentencing factors only if those findings are clearly erroneous. *United States v. Franco–Torres,* 869 F.2d 797, 800 (5th Cir.1989). A factual finding is not clearly erroneous so long as it is plausible in light of the record read as a whole. *United States v. Fields,* 906 F.2d 139, 142 (5th Cir.), *cert. denied,* ── U.S. ──, 111 S.Ct. 200, 112 L.Ed.2d 162 (1990).

■ Whitlow's contention that the district court should have limited itself to consideration of falsification of car titles is unavailing. All of Whitlow's conduct was part of one odometer-tampering scheme. Whitlow directed the activities of buyers, "spinners," and secretaries. The PSI indicates that there were at least nine such individuals. The probation officer examined the roles of four individuals other than Whitlow when considering the leader/organizer adjustment.

■ Even had the court limited itself to consideration of falsification of car titles, the record supports a leader/organizer adjustment: Whitley and Rochford falsified car titles at Whitlow's behest; Rochford alone falsified 400–500 car titles in a six-month period. Falsification and delivery of such a large number of titles is extensive criminal activity.

## B.

■ Whitlow next contends that the district court failed to make any specific factual or legal findings regarding obstruction of justice. The government contends that the district court made an adequate finding that Whitlow obstructed justice.

Whitlow contended in the district court that Bennett did not mention Whitlow's involvement in the Vance shooting incident in his confession. He also contended, in the form of an unsworn assertion, that he never threatened Barrington. The government responded that Bennett confessed Whitlow's involvement to Department of Transportation Investigator Robert Eppes and that Barrington had testified under oath regarding Whitlow's threats to her.

> When the defendant disputes a fact contained in the [PSI], the district court must articulate *either* (1) a finding as to the disputed fact, *or* (2) the court's determination that such a finding is not necessary because the disputed fact will not be taken into account in calculating the sentence.

*United States v. Piazza,* 959 F.2d 33, 36 (5th Cir.1992).

> [Fed.R.Crim.P.] 32(c)(3)(D) does not require the district court to mouth any particular magic words or to make a talismanic incantation of the exact phraseology of the rule; it suffices that the record reflects that the court expressly adverted to the factual controversy in the [PSI] and complied with either of the alternative mandates of the rule.

*Piazza,* 959 F.2d at 37. "It is enough that ... the sentencing judge addresses the de-

fendant's arguments and complies with applicable legal limits in a manner that is comprehensible when the sentencing hearing is viewed in the context of the record—including the presentence investigation—as a whole." *United States v. Lopez–Escobar*, 884 F.2d 170, 173 (5th Cir.1989).

Regarding the Vance incident, the district court noted,

> Mr. Bennett did give a confession. The act was done. It was done shortly after, supposedly, this conference with Mr. Whitlow took place. I guess the most damning evidence is that when Mr. Whitlow was arrested and a gun was recovered from his back seat, it was the same gun that shot into Mr. Vance's business.

The court also heard counsel's recapitulation of Whitlow's assertions regarding threats to Barrington. After hearing counsel's arguments regarding Barrington, the district court said, "I think certainly by a preponderance of the evidence that there is justification to increase the offense level by two levels due to obstruction of justice[.]"

Reading the record as a whole, we conclude that the district court made a factual finding that Whitlow was involved in the Vance incident. That court also implicitly found that Whitlow threatened Barrington. Even if the court made no findings regarding the threats to Barrington, Whitlow's objection, based upon bare assertions that he did not threaten Barrington, need not have been considered. *Lghodaro*, 967 F.2d at 1030.

### C.

Whitlow next contends that the district court arbitrarily calculated the amount of loss upon which his offense level was based and that the resulting figure is clearly erroneous. The government contends that the calculation represents a reasonable estimate of the actual loss and is not clearly erroneous.

 The odometer-tampering guideline refers sentencing courts to the fraud guideline when the offense involves more than one car. U.S.S.G. § 2N3.1(b)(1). That guideline yields different offense levels depending upon the amount of loss. *Id.*

§ 2F1.1. "In a case involving a misrepresentation concerning the quality of a consumer product, the loss is the difference between the amount paid by the victim for the product and the amount for which the victim could resell the product received." *Id.*, comment. (n. 7 (a)). "[T]he loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." *Id.*, comment. (n. 8). A reviewing court will disturb a factual finding regarding amount of loss only if that finding is clearly erroneous. *United States v. Bachynsky*, 949 F.2d 722, 734–35 (5th Cir. 1991) (per curiam) (en banc), *cert. denied*, — U.S. —, 113 S.Ct. 150, 121 L.Ed.2d 101 (1992).

The district court took judicial notice of the National Automobile Dealers Association (NADA) guide that Whitlow introduced at the sentencing hearing. The court noted that the NADA "High Mileage Table" stated that the reduction of value for high mileage should not exceed 40% of a car's value. After a lengthy discussion of valuation, the court acknowledged the accuracy of the probation officer's determination that the cars were worth only 25% of what the buyers paid. The court, however, gave Whitlow the benefit of the doubt and calculated the loss based upon the 40% loss-of-value figure from the NADA guide. The court rounded down the average purchase price to $10,000 and arrived at a loss of $4,000 per car. That finding is based upon the NADA guide and is plausible in light of the record read as a whole.

### D.

Whitlow finally contends that the district court improperly prohibited him from employment in the used-car industry as a term of supervised release. We recently held in an odometer-tampering case that such a prohibition is proper. *See United States v. Mills*, 959 F.2d 516, 519–20 (5th Cir.1992).

The judgment of sentence is AFFIRMED.