**UNITED STATES, Plaintiff,**

v.

**Mershad ALBORZ, Defendant.**

**No. CR–92–0086–VRW.**

United States District Court,
N.D. California.

April 14, 1993.

---

Jeffrey Lawrence, Asst. U.S. Atty., San Francisco, CA, for U.S.

Joseph Scarpello (Retained), Orange, CA, for Alborz.

**ORDER**

WALKER, District Judge.

Defendant is one of six individuals charged with a series of violations of 15 U.S.C. § 1984, an offense popularly referred to as odometer fraud.

Defendant pled guilty to three counts of this offense. Two of his co-defendants were also charged with, and pled guilty to, money laundering (18 U.S.C. § 1956). Following the pleas, a presentence investigation was ordered and a presentence report prepared by the United States Probation Officer of this court. Defendant's sentencing came before the court on March 19, 1993. The presentence report recommended that defendant's specific offense level under the United States Sentencing Guidelines be determined by aggregating the amounts by which defendant's sales prices exceeded the purchase prices for all the cars on which defendant tampered with the odometer. Consideration of this recommendation necessitates a revisit of Sentencing Guidelines Chapter Two, Part F—Offenses Involving Fraud or Deceit.

**I.**

Licensed as a wholesale automobile dealer and operating under the name Import Motors, defendant bought cars from people who advertised them for sale in newspapers. He provided a false name and address to conceal his true identity. After rolling back the odometers in these cars, defendant, in conjunction with his co-defendants, sold the cars through automobile auctions in southern California. On documents completed at the auctions, defendant represented that the odometer readings on the cars reflected their true and correct mileage.

One example of this scheme will suffice to illustrate how it worked. On September 6, 1989, defendant bought for $4800 a 1983 Honda with 118,810 miles of use. On October 11, 1989, the vehicle was sold by Import Motors to Bay Cities Auto Auction for $6400, but with 59,275 miles on the odometer. In connection with the sale, defendant completed a form showing that he sold the vehicle to Bay Cities Auto Auction with 59,275 miles on the odometer and certifying that to the best of his knowledge this was the true mileage of the vehicle. In all, defendant rolled back the odometers on six vehicles charged in the indictment. These cars were sold for amounts totalling $14,900 more than he paid for them.

Eventually, the odometer scheme in which defendant was involved came to light. The cars were traced to their original owners who identified defendant as the person who bought the cars using a false name. Defendant was indicted and, as noted, in due course entered his plea.

Just before the scheduled sentencing, it developed in a chambers meeting with the probation officer who prepared the presentence report[1] that with respect to at least

---

1. Meetings before sentencing of the judge and probation officer are a matter of some controversy in the federal judiciary. Without addressing that controversy, the court notes parenthetically that the meeting with the probation officer proved very helpful in highlighting the problem addressed in this order.

several, if not all, of the cars defendant sold with falsified odometer readings, he also did detailing work or other rehabilitation of the vehicles. But the presentence report did not consider the effect of any of this work on the value of the cars sold and thus the victims' actual losses. There is no suggestion that the detailing and rehabilitation work did not add legitimate value to the cars. For the reasons which follow, the presentence report, by not taking account of this work, overstates the amount of the loss actually suffered by the victims of defendant's fraud and recommends a longer sentence than may be appropriate under the Sentencing Guidelines.

## II.

■ The offense of odometer fraud is designated as a base offense level six under the Sentencing Guidelines. See United States Sentencing Guidelines Manual, § 2N3.1(a) (1992 ed). For crimes involving fraud or deceit, the Guidelines require an increase in offense level to reflect what are termed specific offense characteristics. See § 2F1.1.[2] The Guidelines' specific offense level for fraud and deceit crimes depends, in part, upon the loss suffered by the victim of the crime.

As with other fraudulent activities, setting a sentencing for odometer fraud requires the court to consider the amount of loss suffered by victims. A table reflecting the increase in offense level for various amounts of victim loss appears in section 2F1.1(b)(1) of the Guidelines Manual. A loss greater than $10,-000, but less than $20,000, calls for an increase in the offense level of three. Based

on the $14,900 difference between defendant's total purchase and sale prices for the cars to which he pled to odometer tampering, the probation officer assigned an additional three points to defendant's total Guidelines score.

Contrary to the assumption implicit in the presentence report, however, the loss associated with odometer fraud does not equate simply to the difference between what a person who tampers with an odometer buys a car for and the amount for which that person sells the car. In the case of a high mileage car purchased and sold, and which has been detailed, repainted, given new tires and a battery and had its odometer rolled back, the difference in the price before and after these events reflects the value added by each activity, not simply the reduced mileage. A criminal defendant who has done all of these things before reselling the car has conferred both actual and illusory value on the purchaser of the car. Because the specific offense characteristics of the Guidelines seek to capture the actual loss (or the intended loss, if that amount is higher and determinable) from the criminal activity,[3] any specific offense characteristic which includes in the amount of loss the value added by defendant's legal activities in relation to the car overstates the seriousness of the loss, and thus the crime. This is precisely the mistake made here by the preparer of the presentence report.

In the case of value added by actual physical improvements in the car, the point should be readily perceived. Moreover, even a car

---

**2.** Odometer tampering is, of course, a species of fraud. People buy used cars on the basis of their condition, appearance, make, model and the amount of mileage on the car, among other factors. Because not all aspects of a car's condition are apparent from its appearance and may not be revealed in an inspection, mileage of the vehicle suggests additional information about the condition and anticipated longevity of the car. Of course, mileage is not a perfect indicator of a car's condition or predictor of its longevity, but most people who buy, sell or trade their cars have some fairly concrete notions about the service they can expect a car of certain mileage to render and would expect that the maintenance and other operating expenses of a car would relate inversely to the amount of its mileage. Consequently, a car's mileage serves as a sort of surrogate for the car's condition, longevity and

anticipated costs of its ownership and operation, all matters which are material to the buyer of an automobile. Because purchasers of used cars rely on a car's mileage in establishing its worth, rolling back a car's odometer is properly deemed a fraudulent activity. Section 2N3.1(b) of the Sentencing Guidelines directs courts to look to section 2F1.1 in preparing sentences for odometer tampering violations involving more than one vehicle.

**3.** See *United States v. Kopp*, 951 F.2d 521, 523 (3d Cir 1991) (in applying section 2F1.1 of the United States Sentencing Guidelines, the district court should calculate "the 'loss' as actual loss, substituting intended or probable loss if either amount was higher and determinable.") See also Application Note 7 to § 2F1.1.

with rolled back odometer and no physical alterations may still have part of its value attributable to legitimate activities of the odometer tamperer. Cars' values vary according to the time of year and their location. All things being equal, a convertible might well command a higher price in the spring than in the fall. Historically, Fords have been more popular in the west and Chevrolets more popular in the east. An odometer tamperer who holds a car until prime season for its demand or who moves a car to a place where the make or model is more popular has added legitimate value to the car, as well as fraudulent "value" due to reduced mileage on the odometer.

Likewise, an odometer tamperer who buys a car at a particularly favorable price through skillful and non-deceptive bargaining or because he has located a seller desperate to sell performs an important service to the economy, whose efficient functioning depends on market makers. The odometer tamperer should not be punished for such constructive, wholly legitimate activities. Yet, perversely, that is the effect of measuring the tamperer's gain solely by a comparison of his purchase and sale prices.

### III.

Following discovery of the possible overestimate of loss, the court offered all six of the defendants involved in the scheme in which defendant participated the option of continuing their sentencings while the various probation officers assigned to these cases determine the actual loss associated with each defendant's wrongful activities. Two of the defendants declined the option, because it seemed apparent that recalculation would not alter their Guidelines offense level sufficiently to have a material effect on their sentence range. The other defendants, including the defendant here, took the option to continue the sentencing and their cases were put over to a later date.

In recalculating the victim loss adjustment, the probation officer should be guided by the following principles. Any loss used to calculate the specific offense characteristic must be attributable solely to the odometer adjustments of which defendant stands convicted. That means that the difference between defendant's purchase and sale prices sets an outside limit to the amount of the loss. One way of determining the loss would be to consult the many reliable and widely used valuation services or reports to compare the mileage adjustment for the particular make, model and year of the cars involved. Another way, although actual data may be hard to come by, would be to take the defendant's resale price and deduct his actual costs, including purchase price, rehabilitation, transportation and other costs. Yet another way would be to consult reputable dealers or auto auction houses to obtain the ranges and estimates that they used during the periods when the cars at issue went through the auctions. The able probation officer here may be able to develop still additional means of making a determination of the odometer loss attributable solely to defendant's misconduct and, of course, will do so if he can.

Government counsel at the March 19 hearing correctly pointed out that the amount of loss used to calculate a defendant's specific offense characteristic need not be determined with "precision." See § 2F1.1, Application Note 8. In the case of odometer fraud, as indeed with most frauds, it is impossible to make a precise determination, but that fact does not warrant the court using a loss calculation methodology that the court knows to be in error.

The government, as it seems so often to do in cases involving the application of section 2F1.1, would have the court unduly magnify the victims' loss from fraud. In this case, the government urges that the loss be calculated by subtracting the difference between what defendant purchased each car for and what its *ultimate* purchaser paid for it, even though the car passed through the hands of one or more legitimate dealers or resellers before finally finding an end user. This would unwarrantedly incorporate into the victim loss adjustment the value added by all the legitimate distributional activities of those between the defendant and the end user. While defendant deserves to be punished, his punishment must bear a rational connection to the victims' loss and the government's approach lacks that connection. See *United States v. Schneider,* 930 F.2d 555 (7th Cir.1991).

1310

The Guidelines are still a relatively new undertaking and concededly "imperfect." Section 2F1.1, Background following Application Note 18. Despite the Guidelines' admission of imperfection, there is no excuse for the court, or its probation officers, to use data or an approach which plainly misstate the victim loss. Because that was unfortunately done in this case,

IT IS ORDERED that the sentencing of the defendant shall be continued to April 23, 1993, in order to afford the probation officer an opportunity to make the appropriate adjustments in the amount of victim loss inflicted by defendant.