**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-4024

ALI ALAMI,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-95-269)

Submitted: July 22, 1997

Decided: September 16, 1997

Before MURNAGHAN, NIEMEYER, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Steven D. Benjamin, STEVEN D. BENJAMIN & ASSOCIATES,
Richmond, Virginia, for Appellant. Walter C. Holton, Jr., United
States Attorney, Douglas Cannon, Assistant United States Attorney,
Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ali Alami pled guilty to conspiracy to commit odometer fraud, 18 U.S.C. § 371 (1994), and odometer tampering, 49 U.S.C. § 32703(2) (1994), 18 U.S.C. § 2 (1994). He appeals his 19-month sentence, contending that the district court used an erroneous definition of "loss" under USSG § 2F1.1* and clearly erred in determining the amount of loss attributable to him. We affirm.

Alami and three co-defendants were charged with cooperating in a two-year scheme by which high-mileage automobiles were bought at auctions, the odometers turned back, and the cars then resold to dealers. The conspirators set up a large number of sham auto dealerships in Alabama, North Carolina, and Virginia to facilitate and conceal the fact that they were obtaining new titles for their vehicles which showed a falsified low mileage. Of the hundreds of cars the defendants bought and sold, the government had complete documentation for 86 cars, of which 84 were rollbacks. After his guilty plea, Alami testified at the trial of his co-defendants.

The sentencing guideline applicable to odometer tampering is USSG § 2N3.1. For an offense involving more than one car, there is a cross-reference to USSG § 2F1.1. Under USSG§ 2F1.1, when a fraud involves a misrepresentation concerning the quality of a consumer product, the loss is the difference between the amount paid by the victims for the product and the amount for which the victim could resell the product. USSG § 2F1.1, comment. (n.7(a)). The probation officer estimated that Alami was responsible for rolling back the odometers on 273 cars and that, following United States v. Whitlow, 979 F.2d 1008 (5th Cir. 1992), an average loss of $4000 per car was

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1995).

2

a reasonable calculation. Alami objected to the calculation, but presented no evidence when he was jointly sentenced with his co-defendants. The district court decided to consider only the 84 cars which were proven rollbacks, and found that Alami was involved with only 80 of those cars.

Relying on United States v. Alborz, 818 F. Supp. 1306, 1309 (N.D. Cal. 1993), the Defendants argued that the amount of loss per car should be limited to the difference in value between a vehicle with high mileage and one with low mileage, and that they should be given credit for improvements made to the cars before resale. They also argued that no more than 40% of the trade-in value should be deducted because of high mileage, as recommended in the National Auto Dealer's Association (NADA) Official Used Car Guide. The district court, however, found that a transaction between automobile wholesalers involving high- and low-mileage cars was quite different from a purchase by a consumer who unknowingly buys a vehicle with an altered odometer. Such a vehicle is known as a "TMU" (true miles unknown) vehicle. Evidence presented by the Defendants during the sentencing established that reputable dealers are extremely reluctant to handle a TMU vehicle, which consequently has a lower resale or trade-in value than a normal high-mileage car.

From interviews with dealers in North Carolina and Maryland, the government estimated that the average difference between the worth of a high-mileage car and the worth of the same car as a TMU vehicle was $7000. The government also presented a chart showing the price for which some of the 84 relevant cars (80 in Alami's case) were purchased by the defendants and the price the consumer paid for each of those cars after the odometer was rolled back. From this information, at the district court's direction, the probation officer calculated that the average increase in price was $6260 per car. After considering this information, the district court decided that $6000 per car was a conservative estimate of the loss to each consumer. The amount of loss attributed to Alami was thus $480,000, giving him a 9-level enhancement for a loss between $350,000 and $500,000. See USSG § 2F1.1(b)(1)(J).

Alami first contends on appeal that the court erred in considering the final purchasers of the vehicles, rather than the dealers to whom

3

the conspirators sold the cars with altered odometers, to be the victims of the offense. Because the guideline mandates this approach, we find no error.

Second, Alami argues that he should have benefitted from the court's decision to give co-defendant Joseph Armetta a credit of $400 for each of 40 cars where there was some evidence that Armetta made improvements to those cars before reselling them to dealers. When the court made this ruling at sentencing, Alami's attorney immediately claimed that his client had also made improvements to cars, but the district court found that there was no evidence that he had done so. Alami's argument is meritless because, even if the loss attributed to him were reduced by $16,000, his offense level would not change.

The sentence is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4