**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2011

No. 09-40946

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HUGO ALBERTO DIAZ, JR.; HUGO ALFREDO DIAZ, also known as Hugo
Alfredo Diaz, Sr.,

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 7:07-CR-143-2

Before JOLLY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Father and son Hugo Alfredo Diaz, Sr. and Hugo Alberto Diaz, Jr. appeal
the convictions and sentences they received as a result of their involvement in
an extensive cocaine trafficking operation.  On appeal, they challenge the
sufficiency of the evidence supporting the convictions, the admissibility of
evidence brought before the jury, and the inadequacy of the language used in the
indictment and in the jury instructions.  For the reasons outlined below, we hold

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-40946

that the district court did not err on any of these claims, and therefore AFFIRM the judgment of the district court.

I.

Hugo Alfredo Diaz, Sr. ("Senior") and Hugo Alberto Diaz, Jr. ("Junior"), father and son, were convicted of charges stemming from their involvement in a cocaine trafficking organization that smuggled cocaine from Mexico into South Texas and then transported the cocaine to other locations around the United States. Law enforcement officials began investigating this organization in 2001. In 2007, Senior and Junior were both charged with one count of conspiring to possess more than five kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and two counts of possessing more than five kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2. Senior was also charged with conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (h). The evidence presented at trial included testimony about a series of seizures of cash and cocaine in several different incidents, along with the more general testimony of confidential informants and co-conspirators.

The evidence went back in time to April 2, 2003, when an officer with the Hoover, Alabama Police Department stopped an 18-wheel truck driven by Junior. Junior denied he was carrying contraband or cash and consented to a search. The officer found $530,019 in cash, packaged in forty-three vacuum-sealed bundles. The officer videotaped the truck and cab in which the money was found. Junior said he knew nothing about the money. The truck and trailer were both registered to "Hugo Diaz." Junior was not arrested.

In a separate incident, around April 2005, confidential informant Tomas Vento asked Senior to help him arrange driving a load. Senior introduced Vento to Omar Cantu-Montalvo, who gave a load to Senior, who gave it to Vento. Vento took a load of produce to Atlanta and returned to South Texas with

2

No. 09-40946

approximately $1,000,000.  Vento met with law enforcement officers who took the money and returned it the next day.  Vento continued to a hotel where he met Senior, and wore a wire to record their conversation.  Officers also surveilled the meeting.  Vento told Senior that he put only nineteen of the twenty bundles of money in the secret compartment of the truck because all twenty bundles would not fit.  Senior gave Vento brown bags into which Vento put the contents of the twentieth bundle, and Omar picked up the bags and gave them to Junior.  Omar paid Vento $10,000 for making the trip and Vento paid $2,000 of that money to Senior for use of his truck, which bore the logo of a company owned by Junior.

Law enforcement officers then observed a controlled delivery of the money to an apartment and subsequently searched that apartment.  Officers found 20 bundles of cash in the living room, 109 packages of cash in the attic, and a heat-sealed bag of cash in an ice chest.  In total, $3,748,404 was found throughout the house.  Officers also found heat sealers, heat sealer bags, cellophane, and carbon paper in various locations throughout the house.  Drug ledgers—handwritten notes, documents, and receipts with locations, dates, names, and dollar figures—were also found in the house.

Vento also introduced Senior and Junior to Gerardo Hernandez, another driver.  In January 2006, Senior and Junior arranged for Vento to transport a load of cocaine with a gross weight of 134.41 kilograms and a net weight of 99.74 kilograms.  The load was seized in North Carolina.

Paul Seeley, a co-conspirator, testified that Junior hired him to transport cocaine. Seeley, accompanied by Junior, drove a tractor trailer containing a mix of legitimate produce and packages of cocaine.  Seeley was stopped and questioned by a police officer.  He provided written consent to search the tractor trailer, where the contraband was discovered.  Seeley told the officer that Junior had hired him to move drugs.

No. 09-40946

Ramon Meza, a co-conspirator, testified that he was part of the same organization as Senior and Junior. Meza testified that he had loaded Junior's truck with cocaine eight to ten times. He testified that Junior was a truck driver but later only hired drivers. Meza maintained ledgers to track his jobs according to a ledger system that was already in place for the organization. At trial, Meza interpreted a ledger that was not prepared by him.

After hearing this evidence at trial, the jury found Senior and Junior guilty on all counts. The district court sentenced both Senior and Junior to three concurrent 360-month terms of imprisonment, followed by concurrent five-year terms of supervised release. Senior also received a 240-month term for count four, to run concurrently with his other terms, followed by a three-year term of supervised release. Both Senior and Junior timely appealed.

## II.

We will first address the arguments relating to Senior. Senior contends that the district court erred by: (1) instructing the jury that the government must prove that he conducted a financial transaction involving the "proceeds" rather than the "profits" of an unlawful activity; (2) admitting evidence of his prior conviction for money laundering; (3) denying his motion for judgment of acquittal and upholding the jury conviction although there is insufficient evidence on each of his counts; and (4) admitting into evidence drug ledgers found at stash houses belonging to the organization. Each of these contentions is considered below.

## A.

Relying on *United States v. Santos*, Senior first contends that the district court committed reversible error with regard to his conspiracy to launder money count, because neither the indictment nor jury instructions defined the term "proceeds" as "profits." 553 U.S. 507, 128 S. Ct. 2020, 2025 (2008). Because Senior did not object on this basis at trial, we review his claim for plain error.

4

No. 09-40946

*See United States v. Fernandez*, 559 F.3d 303, 316 (5th Cir. 2009). To find plain error, we must find "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus,* 130 S. Ct. 2159, 2164 (2010) (quotations and citations omitted).

In *Santos*, a four-justice plurality of the Supreme Court held that "proceeds" should be defined as "profits" instead of "gross receipts" under § 1956. 128 S. Ct. at 2025. The plurality noted that "proceeds" can mean either "receipts" or "profits," but ruled that "profits" was the correct definition under the rule of lenity. *Id.* Justice Stevens, who cast the decisive fifth vote, noted in his concurrence that "proceeds" could "have one meaning when referring to some specified unlawful activities and a different meaning when referring to others." *Id.* at 2031 (Stevens, J., concurring); *United States v. Brown*, 553 F.3d 768, 783 (5th Cir. 2008) (noting that Justice Stevens did not consider "profit" to be the definition of "proceeds" in *all* criminal contexts). The dissenting opinion noted that five justices agreed that "proceeds" includes "gross profits." *Santos*, 128 S. Ct. at 2035 & n.1 (Alito, J., dissenting). Accordingly, with respect to the meaning of "proceeds," we have held that the "precedential value of *Santos* is unclear outside the narrow factual setting of that case, and the decision raises as many issues as it resolves for the lower courts." *Brown*, 553 F.3d at 783.

In the light of this uncertainty, we have recently held that using the term "proceeds" rather than "profits" to define violations of § 1956 does not constitute plain error. *See Fernandez*, 559 F.3d at 316; *United States v. Bueno*, 585 F.3d 847, 850 (5th Cir. 2009); *United States v. Arbuckle*, 2010 LEXIS 17331, *6 (5th Cir. 2010) (unpublished). Accordingly, we hold that the district court did not

No. 09-40946

commit plain error by using the term "proceeds" rather than "profits" in the jury instructions for the money laundering charge.

### B.

Senior next contends that the district court committed reversible error by admitting into evidence his prior money laundering conviction. We review the admission into evidence of prior convictions under a heightened standard of abuse of discretion. *United States v. Miller*, 520 F.3d 504, 511 (5th Cir. 2008). We use the two-part test set forth in *United States v. Beechum*, which requires extrinsic evidence to (1) be relevant to an issue other than the defendant's character; and (2) have probative value that is not substantially outweighed by undue prejudice, and not be otherwise inadmissible under Rule 403. 582 F.2d 898, 911 (5th Cir. 1978) (en banc). If we do find error under the *Beechum* test, we must evaluate whether it was harmless error. *United States v. Mitchell*, 484 F.3d 762, 774 (5th Cir. 2007).

In 2003, Senior pleaded guilty to money laundering in Mississippi. At trial here, Senior objected to the introduction of his 2003 conviction, citing Rule 404(b), which provides that evidence of prior crimes may be admitted only to show things such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," and cannot be used to prove the character of a person in order to show action in conformity therewith. FED. R. EVID. 404(b).

On appeal, Senior challenges both the relevance and prejudicial effect of this evidence. Concerning relevance, Senior contends that because his previous conviction was in Mississippi courts, the federal court did not know if the elements of the state crime were similar to the charged offense. Senior fails to demonstrate any material differences between the elements of the state and federal money laundering convictions; further, he fails to cite authority establishing that such similarity is necessary for prior convictions to be admitted

6

into evidence. The district court noted that Senior's plea of not guilty put at issue his "modus operandi, intent, and knowledge," which were relevant to his prior conviction and therefore allowable under Rule 404(b). We agree and hold that the prior money laundering conviction was relevant to the money laundering charge here.

Second, Senior contends that the prejudicial effect of the previous conviction was "overwhelming" because the jury could have confused the guilty plea of Senior in the Mississippi conviction with an admission of guilt in this case. We have reviewed the trial testimony Senior claims was confusing to the jury and find no merit to his contention; the testimony regarding the 2003 conviction was straightforward and clearly distinguished from that regarding his 2008 conviction.

Senior also argues that the district court erred in not giving a limiting instruction to the jury prior to admitting the evidence, but he provides no authority that doing so was necessary. The district court did provide jury instructions distinguishing between acts in the indictment and similar acts to those charged in the indictment, saying, "You have heard evidence of acts of the defendant which may be similar to those charged in the indictment, but which were committed on other occasions. You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment." The instructions continued by enumerating the "limited purposes" for which evidence of similar acts could be considered. Accordingly, under *Beechum*, we hold that Senior's previous conviction was relevant to issues other than his character and did not create an undue prejudicial effect. Consequently, the district court did not err by admitting Senior's prior conviction.

## C.

Senior contends that the evidence was insufficient to sustain his conviction on each count. He properly preserved these challenges by moving for judgment

7

No. 09-40946

of acquittal. Thus, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). Under this "highly deferential" standard, *id.*, "the jury is free to chose among reasonable constructions of the evidence." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999). We consider the sufficiency of the evidence for each count below.

1.

Senior first contends that there was insufficient evidence for a rational jury to determine that he had conspired to engage in money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (h) because it was not established that he had the requisite knowledge of the illegal nature of the transaction.[1] Senior was convicted of conspiracy to commit money laundering because he arranged for a confidential government informant to transport approximately $1,000,000 in cash across state lines as part of Senior's involvement in the drug-transporting organization. Section 1956(a)(1)(a)(i) requires "intent to promote the carrying on of specified unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i). Senior states, without further explanation, "that there was no evidence

---

[1] Section 1956 provides, in relevant part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--

    (A)(i) with the intent to promote the carrying on of specified unlawful activity; or

        (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986 . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

No. 09-40946

presented . . . that the Appellant had knowledge that the funds involved were actually funds from illegal activity."[2]

Senior's assertion is contravened by the testimony of various witnesses who testified that they had loaded cocaine onto Senior's truck, carried approximately $1,000,000 of cash hidden in the compartment of their truck in a transfer arranged by Senior, and watched Senior picking up and receiving money in bags. A jury may infer knowledge of a conspiracy from a "collection of circumstances." *United States v. Fuchs*, 467 F.3d 889, 908 (5th Cir. 2006) (quoting *United States v. Espinoza-Seanez*, 862 F.2d 526, 537 (5th Cir. 1988)). In the light of this evidence, we hold that the evidence was sufficient for a rational jury to find Senior engaged in a financial transaction with the intention of promoting unlawful activity.

2.

Next, Senior contends that there was insufficient evidence to sustain his conviction of conspiracy to possess cocaine with intent to distribute. The elements of this charge require proof that: "(1) an agreement existed between the defendant and one or more persons to violate the applicable narcotics laws; (2) each defendant knew of the conspiracy and intended to join it; and (3) the defendant participated voluntarily in the conspiracy." *United States v. Infante*, 404 F.3d 376, 385 (5th Cir. 2005).

Senior contends that the only evidence presented at trial to demonstrate his involvement on this count was testimony by a co-conspirator about drug ledgers. This assertion is factually incorrect. Government informant Tomas Vento provided testimony that he had introduced another driver to Senior to

---

[2] Senior also contends that "the government presented no evidence showing the funds in questions [sic] were profits." He provides no authority indicating that the funds in question must be profits for the sake of interpreting the provision with regard to sufficiency of the evidence; this argument is therefore waived as inadequately briefed.

No. 09-40946

transport cocaine. According to Vento's testimony, Senior worked with Junior and others in the organization to coordinate the driver transporting cocaine for the operation. A jury reasonably could understand Vento's testimony, in conjunction with the other evidence presented in the case, to satisfy each of the requisite elements of this charge. When assessing the sufficiency of evidence, we review the evidence "in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction." *Harris*, 293 F.3d at 869. Consequently, we hold there is sufficient evidence for a rational jury to have found Senior guilty of conspiracy to possess cocaine with the intent to distribute.

3.

Senior also asserts that there was insufficient evidence to sustain his conviction of possession of cocaine with the intent to distribute. The elements of this charge require proof of "(1) possession; (2) knowledge; and (3) intent to distribute." *United States v. Patino-Prado*, 533 F.3d 304, 309 (5th Cir. 2008). Senior argues that "there was simply no evidence" that indicated that he possessed narcotics. But, at trial, Antonio Garza testified that he had personally loaded Senior's truck with cocaine. We have previously recognized that it is unlikely that an unknowing, innocent driver would be entrusted with a large amount of narcotics. *United States v. Martinez-Moncivais*, 14 F.3d 1030, 1035 (5th Cir. 1994). A rational jury could reach the same conclusion and find Senior guilty of possession of cocaine with the intent to distribute. We therefore conclude that there was sufficient evidence to sustain the conviction of Senior on the charge of possession of cocaine with the intent to distribute.

D.

Senior's final issue on appeal is that the trial court erred by admitting drug ledgers found in a stash house belonging to the organization. The drug ledgers were found on April 7, 2005, when a search warrant was executed at an

No. 09-40946

apartment used as a stash house by Senior's co-conspirators in McAllen, Texas. Because Senior did not object to the evidence on the basis presented on appeal we review for plain error. *United States v. Williams*, 620 F.3d 483, 488 (5th Cir. 2010).  Plain error requires "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus,* 130 S. Ct. 2159, 2164 (2010) (quotations and citations omitted).

To satisfy the plain error standard, Senior bears the burden of demonstrating each of the four elements enumerated.  Regardless of whether there was error, Senior fails to address whether it affected the outcome of the district court proceedings.  The ledgers contained only one notation with regard to Senior, which indicated that he had taken a load of cocaine to Atlanta.  But, Antonio Garza, one of Senior's co-conspirators, testified that he had personally loaded Senior's truck with cocaine on one occasion.  Thus, eyewitness evidence was already before the jury to indicate that Senior had transported cocaine.  We therefore remain unconvinced that admission of the ledgers affected the outcome of Senior's district court proceedings, and thus decline to find plain error.[3]

### III.

We now turn to Junior's appeal.  Junior contends that the district court erred by:  (1) allowing a non-expert to testify about the meaning of drug ledgers; (2) admitting into evidence a DVD depicting a traffic stop; and (3) applying a

---

[3] We have held that the admission of improperly authenticated drug ledgers can require reversal, *see United States v. Jackson*, No. 09-10850, 2011 WL 1002195 (5th Cir. Mar. 22, 2011), particularly where its admission violates the Confrontation Clause.  That issue is not properly raised here, where the defendant did not object at trial or allege a constitutional violation.

No. 09-40946

three-level manager or supervisor enhancement to his sentence under USSG § 3B1.1.(b).  We consider each of these contentions below.

A.

Junior argues that the district court committed reversible error in allowing a non-expert witness to testify about the meaning and relevance of drug ledgers seized at stash houses.  A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Hart*, 295 F.3d 451, 454 (5th Cir. 2002).

At trial, Ramon Eduardo Meza Monreal ("Meza") testified as to the meaning of drug ledger entries seized at stash houses. Meza–who was a member of the same drug trafficking organization as Junior–did not create the ledgers but he had created a similar ledger for his own drug trafficking employees in the group.  He claimed to be able to decipher the meanings of the ledgers introduced at trial.

First, Junior contends that Meza had no personal knowledge of the drug ledgers, in violation of Federal Rule of Evidence 602.  *See* FED. R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter . . . .").  The government notes that Meza, as a co-conspirator involved in the same organization, did have personal knowledge of the events reflected in the entries, the organization's operational methods, and his co-conspirator's codes and nicknames as they appeared in the ledger.

Junior also contends that it was improper for Meza to interpret the drug ledgers because he was not an expert witness.  Federal Rule of Evidence 701 provides that the testimony of a non-expert witness "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge."  FED. R. EVID. 701.  To determine whether a lay opinion in fact

12

constitutes expert testimony, we have noted that "the trend in the circuits seems to be whether the testimony falls within the realm of knowledge of the average lay person." *United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009). Accordingly, we distinguish a process of reasoning "familiar in everyday life" from that "which can only be mastered by experts in the field." *Id.*

Review of the record indicates that Meza's "interpretation" of the ledgers largely revolved around identifying the nicknames of his co-conspirators. He also read numbers that required no interpretation and stated that they represented amounts of cocaine transported. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) ("A mathematical calculation well within the capacity of anyone with a grade-school education is . . . more aptly characterized as a lay opinion."). Finally, Meza indicated that he could determine which city was being referenced in the ledger based upon ledger entries indicating the name of the sports team located that city. The location of sports teams is "within the realm of knowledge of the average lay person," *Caldwell*, 586 F.3d at 384, and thus cannot be said to constitute expert knowledge. Accordingly, we find that the district court did not err by allowing Meza to testify about the meaning of drug ledger entries.

B.

Junior further contends that the trial court erred by admitting a DVD depicting a traffic stop in which $530,019 was found in his vehicle; the government, he argues, did not provide adequate notice to Junior's counsel about the occurrence of the traffic stop or the existence of the DVD. Junior says that the DVD was not in the open file when his counsel conducted discovery in June, at least four months before the trial began. According to the statement of Assistant United States Attorney Alanis the DVD had been on file in the courthouse on October 31, 2008, and available to Junior's counsel when he had been at the courthouse to attend a hearing. Further, the government's June 9,

No. 09-40946

2008 Motion in Limine provided actual notice that it intended to introduce the DVD as evidence.

Junior also contends that the government should have furnished the DVD to him directly under Federal Rule of Criminal Procedure 16(a)(1)(E). Review of the record, however, indicates that Junior's counsel did not timely file a discovery motion, which would have served as a "request of the accused" and required the government to give notice to introduce the evidence. Accordingly, we hold that the district court did not err in admitting into evidence the DVD of Junior's April 2003 traffic stop.

C.

Finally, Junior argues that the district court erred by applying a three level manager or supervisor enhancement to his sentence under USSG § 3B1.1(b). "The determination that a defendant qualifies for an enhancement for his role as a manager or supervisor is a factual finding reviewed for clear error." *United States v. Nava*, 624 F.3d 226, 229 (5th Cir. 2010). Under the clearly erroneous standard, factual findings must be plausible in the light of the record read as a whole. *United States v. Whitlow*, 979 F.2d 1008, 1011 (5th Cir. 1992).

Section 3B1.1 provides: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase [the offense level] by 3 levels." The district court held that Junior recruited and oversaw others and was therefore subject to a three-level enhancement. In applying the enhancement, the district court observed that "[Junior] recruited and oversaw a number of persons involved in this pretty elaborate conspiracy. Four and a half million dollars were seized . . . to me, it was clear he was an organizer, leader, recruited others." The district court also adopted the factual findings in the presentence report. *See* R. at 533.

No. 09-40946

Junior's primary contention is that the district court failed to make a factual finding or adopt the presentence report. This contention is factually incorrect. *See id.* Junior additionally argues that his role as a tractor trailer driver shows he was not a leader but instead a "mule" for the organization. Junior concedes, however, that he "may have recruited a person to transport a load and may have made some arrangements for some loads" and that he communicated directions to other drivers from leaders of the organization. Ultimately, the factual findings of the district court judge, as stated at the sentencing hearing and contained in the presentence report, are plausible in the light of the record read as a whole. Accordingly, we hold that the district court did not clearly err in applying the § 3B1.1(b) enhancement.

## IV.

In sum, the district court committed no reversible error in the trial of this case and accordingly, its judgment is, in all respects,

AFFIRMED.